UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NATIONAL PRODUCTS INC,<br><br>                          Plaintiff,<br>      v.<br><br>INNOVATIVE INTELLIGENT<br>PRODUCTS LLC d/b/a GPS LOCKBOX,<br><br>                          Defendant. | CASE NO. 2:20-cv-00428-DGE<br><br>ORDER REGARDING CLAIMS<br>CONSTRUCTION |

This matter comes before the Court on the parties' proposed findings of fact regarding claim construction. (Dkt. Nos. 117, 118.) The Court held oral argument regarding claims construction on August 30, 2022, pursuant to *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995). (Dkt. No. 114.) Having reviewed the parties' proposed findings of fact, their previously filed briefs, and having considered the arguments and evidence presented in the Markman hearing, the Court makes the following rulings concerning the patent claim terms at issue in this matter.

ORDER REGARDING CLAIMS CONSTRUCTION - 1

## I.  BACKGROUND

Plaintiff, National Products Inc. ("National Products" or "NPI"), a designer and manufacturer of docking cradles and protective cover products, alleges infringement of four patents by Defendant GPS Lockbox.  The patents in question are United States Patent No. 9,706,026 ("the '026 patent"), United States Patent No. 10,454,515 ("the '515 patent"), United States Patent No. 10,630,334 ("the '334 Patent"), and United States Patent No. 10,666,309 ("the '309 patent").  (Dkt. No. 43 at 2.)

All four patents are entitled "Docking Sleeve with Electrical Adapter" and, as Plaintiff acknowledges, share a substantially similar specification.  (Dkt. No. 118 at 2.)  The specification of each of the asserted patents describes the invention as "a cover for protecting a portable electronic device that overcomes limitations of the prior art for efficient and reliable usage of such portable electronic devices."  (Dkt. Nos. 70-2 at 34; 70-3 at 37; 70-4 at 37; 70-5 at 37.)

## II.  SUMMARY OF CLAIMS FOR CONSTRUCTION

The parties submitted a Joint Claim Construction and Prehearing Statement that identified disputed claim terms.  (Dkt. No. 70.)  The parties disagree on the constructions for the following terms:

- "adapter"
- "the adapter is detachable from the hard shell by a user"
- "female connector," "female portion," or "female receptable"
- "male connector" or "male portion"
- "the adapter is configured so that, when coupled to the portable electronic device, the contactor surface is disposed further than any other portion of the adapter from the portable electronic device to form, with the contacts, a male connector configured for coupling to connector contracts within a female receptacle of the external connector"
- "base receiver"
- "female base receiver"
- "tray"
- "a rim to guide proper mating" and "the rim is recessed with respect to the docking support surface"

ORDER REGARDING CLAIMS CONSTRUCTION - 2

- "a docking support surface extending away from the back support surface"

(*Id*. at 11.)

### III.     PRINCIPLES OF CLAIM CONSTRUCTION

Patent claim construction is a question of law for the Court, even if the case is designated to go to a jury trial, but it may have underlying factual determinations that are now reviewed for clear error. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 324 (2015); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370, (1996). After the claims have been properly construed, the fact finder will compare the claims to the allegedly infringing product or process. The comparison is conducted on an element-by-element basis.

When interpreting claims, a court's primary focus should be on the intrinsic evidence of record, which consists of the claims, the specification, and the prosecution history. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314-1317 (Fed. Cir. 2005) (en banc). The Court should begin by examining the claim language. *Id.* at 1312. Claim language should be viewed through the lens of a person of "ordinary skill in the relevant art at the time of the invention." *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1283 (Fed. Cir. 2005). A court should give the claim's words their "ordinary and customary meaning." *Phillips*, 415 F.3d at 1312-1313 (quotation omitted). In construing a claim term's ordinary meaning, the context in which a term is used must be considered. *ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003).

However, the claims "must be read in view of the specification, of which they are a part." *Phillips*, 415 F.3d at 1315 (quoting *Markman*, 52 F.3d at 979. Additionally, the doctrine of claim differentiation disfavors reading a limitation from a dependent claim into an independent claim. *See InterDigital Commc'ns, LLC v. Int'l Trade Comm'n*, 690 F.3d 1318,

1324 (Fed. Cir. 2012). The specification can offer "practically incontrovertible directions about a claim meaning." *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1288 (Fed. Cir. 2009). "When consulting the specification to clarify the meaning of claim terms, courts must take care not to import limitations into the claims from the specification." *Id.* "[A]lthough the specification may well indicate that certain embodiments are preferred, particular embodiments appearing in the specification will not be read into claims when the claim language is broader than such embodiments." *Tate Access Floors, Inc. v. Maxcess Techns., Inc.*, 222 F.3d 958, 966 (Fed. Cir. 2000) (quotation omitted). "By the same token, the claims cannot enlarge what is patented beyond what the inventor has described in the invention." *Abbott Labs.*, 566 F.3d at 1288 (internal quotation omitted). "Likewise, inventors and applicants may intentionally disclaim, or disavow, subject matter that would otherwise fall within the scope of the claim." *Id.* at 1288.

In addition to the specification, a court should consider the patent's prosecution history, which consists of "the complete record of the proceedings before the PTO and includes the prior art cited during the examination of the patent." *Phillips*, 415 F.3d at 1317. However, because the prosecution represents an "ongoing negotiation" rather than the "final product" of the negotiation, "it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* Consulting the prosecution history can, however, be helpful in determining whether the patentee disclaimed an interpretation during prosecution. *Research Plastics, Inc. v. Federal Packaging Corp.*, 421 F.3d 1290, 1296 (Fed. Cir. 2005). "Under the doctrine of prosecution disclaimer, a patentee may limit the meaning of a claim term by making a clear and unmistakable disavowal of scope during prosecution." *Purdue Pharma L.P. v. Endo Pharm. Inc.*, 438 F.3d 1123, 1136 (Fed. Cir. 2006); *see also Chimie v. PPG Indus., Inc.*,

ORDER REGARDING CLAIMS CONSTRUCTION - 4

402 F.3d 1371, 1384 (Fed. Cir. 2005) ("The purpose of consulting the prosecution history in construing a claim is to 'exclude any interpretation that was disclaimed during prosecution.'").

Although courts are permitted to consider extrinsic evidence, like expert testimony, dictionaries, and treatises, such evidence is generally of less significance than the intrinsic record. *Phillips*, 415 F.3d at 1317 (citing *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004)). Extrinsic evidence may not be used "to contradict claim meaning that is unambiguous in light of the intrinsic evidence." *Id*. at 1324.

"A patent is invalid for indefiniteness if its claims, read in light of the patent's specification and prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.,* 572 U.S. 898, 899 (2014). "Indefiniteness is a legal determination; if the court concludes that a person of ordinary skill in the art, with the aid of the specification, would understand what is claimed, the claim is not indefinite." *Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1381 (Fed. Cir. 2015) (citation omitted) (finding the challenged claim term not indefinite). Patents are presumed valid, and a challenger must prove invalidity by clear and convincing evidence. *Intel Corp. v. VIA Techs., Inc.*, 319 F.3d 1357, 1366 (Fed. Cir. 2003).

According to Defendant's expert, a person of ordinary skill in the art with respect to the patents at issue in this case would have had a bachelor's degree in a technical field such as product design or mechanical engineering and approximately two years of experience working in an industry position involved in product design and development for accessories for portable electronic devices. (Dkt. No. 72-2 at 13.) Plaintiff's expert argues that a person of ordinary skill in the art of the invention claimed in the Patents-In-Suit would be an engineer or a product designer with approximately two or more years of experience with mechanical design and

manufacturing that is obtained through vocational studies, from working in the mechanical arts, or a combination of both.  (Dkt. No. 72-3 at 11.)

### IV.      TERMS FOR CONSTRUCTION

#### A.      "Adapter"

The first claim term in dispute is "adapter."  The term appears in claims 1, 2, 11, and 14 of the '515 patent and claims 1, 2, 3, 10, and 14 of the '334 patent.  (Dkt. No. 70-1 at 2.)  Since filing their Joint Claim Construction and Prehearing Statement, the parties have agreed that the term "adapter" shall be construed as follows: "a device positioned in a removable cover that electrically connects otherwise incompatible connectors."  (Dkt. Nos. 117 at 26; 118 at 38.)  Accordingly, the Court adopts the agreed upon construction of this term.

#### B.      "The Adapter is Detachable from the Hard Shell by a User"

The next term disputed by the parties is "the adapter is detachable from the hard shell by a user".  (Dkt. No. 70-1 at 14.)  The term appears in claims 1 and 10 of the '334 patent.  (Dkt. No. 70-4 at 53-54.)

##### 1.    Indefiniteness

Defendant contends the term "detachable from the hard shell" is indefinite because Plaintiff quoted the specification of the '026 patent, which is incorporated into the other Patents-In-Suit, to construe "detachable" to mean the presence of an adapter that is "fixedly positioned" in the cover.  (Dkt. No. 117 at 27.)

Defendant argues that because of this, "detachable" cannot reasonably be construed to mean "fixedly positioned", particularly when the examples provided "would require destruction of the device to remove the adapter." (*Id*.)  As an example, Defendant argued during the Markman hearing that a person of ordinary skill in the art could construe an adapter as

"detachable" if it could be cut off with a welding torch. (Dkt. No. 121 at 105-106.) Defendant further argued, "if you take a hammer, and you knock a chip off of a rock, you have detached that chip from the rock" even though it was "fully, unambiguously attached before, and even though in that case it couldn't be reattached." (*Id*. at 107.) Put another way, Defendant argues an adapter that is "fixedly positioned" as observed in the embodiments is not "detachable" unless the term "detachable" includes removal through destruction; a result so absurd that one can only conclude "detachable" is indefinite.

Plaintiff contends that the phrase "detachable from the hard shell by a user" consists of commonly understood terms and would be readily understood by a skilled artisan at the time of invention. (Dkt. No. 118 at 12, 38.)

Although the embodiments contained in the specifications may not depict an adapter detached from a cover, "particular embodiments appearing in the specifications will not be read into claims when the claim language is broader than such embodiments." *Tate Access Floors*, 222 F.3d at 966. A person of ordinary skill in the art could not reasonably construe the word "detachable" as being limited by the embodiments described and depicted in the specifications. More importantly, a person of ordinary skill in the art would conclude "fixedly positioned" does not exclude a user's ability to detach the adapter without destroying the cover because "fixedly positioned" does not connote an object permanently affixed.

The Court, therefore, concludes a person of ordinary skill in the art or a layperson would understand a user's ability to "detach" the adapter from the hard shell without destroying the cover. Accordingly, the Court finds that the term "detachable" is not indefinite.

## 2. Claim Construction

Because the term "detachable", in the context of a mounting platform for a portable electronic device, is readily understandable to lay persons and people of ordinary skill in the art, the Court declines to construe this term. *Phillips*, 415 F.3d at 1314 ("In some cases, the ordinary meaning of claim language ... may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words."); *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015) ("Because the plain and ordinary meaning of the disputed claim language is clear, the district court did not err by declining to construe the claim term.").

### C. "Female Connector", "Female Portion", or "Female Receptacle"

The parties dispute the terms "female connector", "female portion", and "female receptacle." (Dkt. No. 70-1 at 5-8.) The term "female connector" appears in claims 1, 8, and 9 of the '026 patent and claims 1, 2, 5, and 10 of the '309 patent. (*Id.*) The term "female portion" appears in claim 11 or the '026 patent, and the term "female receptacle" appears in claim 1 of the '515 patent. (*Id.*)

#### 1. Indefiniteness

Defendant argues the terms "male connector" and "female connector" as used in the Patents-In-Suit are indefinite because they "refer to various structural elements projecting either out or in" and represent an "indiscriminate, ambiguous usage" inconsistent with the ordinary meanings of the terms "male" and "female", which "typically apply only to structural elements project out or in, as the case may be, not both." (Dkt. No. 117 at 12.) Defendant further asserts Plaintiff made inconsistent statements during prosecution of the Patents-In-Suit rendering the terms "male connector" and "female connector" indefinite. (*Id.* at 14-17.)

Citing several dictionary definitions, Plaintiff contends a person of ordinary skill in the art would understand the plain and ordinary meaning and scope of the term "female connector" as it is used in the Patents-In-Suit.  (Dkt. No. 118 at 8.)  During the Markman hearing, Plaintiff argued the dictionary definition of "male connector" emphasized the idea that  "male connectors and female connectors are complementary figures or shapes, and that they are made for mating with one another."  (Dkt. No. 121 at 76.)

In support of its argument, Plaintiff cites a recent claims construction order issued by U.S. District Judge William N. Conley in the Western District of Wisconsin.  *National Products, Inc. v. ProClip USA, Inc. et al.*, Case No. 3:20-cv-00439-wmc, 2022 WL 2304114 (W.D. Wis. June 27, 2022).  In his order, Judge Conley analyzed the '026 and '515 patents at issue in this case and considered whether the terms "male connector", "male portion", and "female connectors" as used in those patents were indefinite.  (*Id*. at *7-*8.)

Judge Conley found it was clear which connectors were considered male and which were considered female: "[g]enerally, throughout the entirety of the patent, protruding *walls* of the connector create a male connector, as opposed to the recessed position of the prongs that create a female connector." (*Id*. at *7.) (emphasis in original).  Judge Conley found that reading the claims in the context of the patent as a whole, a person of ordinary skill in the art should understand that a connector as contemplated by the patent is male when the outer walls surrounding the connectors protrude outwards, even if the contactors themselves may be recessed within the walls.  (*Id*. at *8.)  With respect to female connectors, Judge Conley reasoned that as long as male and female connectors are mirror images of each other, a person of ordinary skill in the art would not need more information to practice the patent.  (*Id*.)

Examining the words and illustrations contained in the patents, the Court finds Judge Conley's reasoning persuasive. The language of the patents and the accompanying images are sufficient to inform a person skilled in the art about the meaning of terms such as "female connector", "female portion", and "female receptacle" in the context of a mounting platform for a portable electronic device. *Biosig*, 783 F.3d at 1381. Accordingly, the Court finds these terms are not indefinite.

2. Claim Construction

During the Markman hearing, Plaintiff proposed an alternative construction of "female connector", "female portion", and "female receptacle" that it claims is consistent with the plain and ordinary meaning of the term, but provides additional context: "an inwardly recessed connector for mating with a complementary shaped protruding connector." (Dkt. No. 121 at 52-54.)

Although claim construction is matter of law within the sole province of a judge, the Court must be cognizant of the eventual involvement of a jury. *Control Res., Inc. v. Delta Elecs., Inc.*, 133 F. Supp. 2d 121, 127 (D. Mass. 2001). The purpose of claim construction is to discern the meaning a person of ordinary skill in the art would have attributed to a disputed term and then to convey that meaning understandably to a lay jury. *Big D Indus., Inc. v. Fresh Prod., Inc.*, Case No. CIV-21-211-F, 2022 WL 1017908 at *2 (W.D. Okla. April 5, 2022). Claims "must be translated into plain English so that a jury will understand." *Control Res.*, 133 F. Supp. at 127.

Lay jurors will likely have a general sense of what terms such as "female connector" and "male connector" mean in the context of electronic devices and accessories. Nevertheless, the Court finds Plaintiff's proposed construction expresses, briefly and in relatively plain English,

the idea that female and male connectors are complementary forms designed for mating with each other.  The Court finds this construction will be helpful to the jury and adopts it.

### D.      "Male Connector" or "Male Portion"

The next terms disputed by the parties are "male connector" and "male portion." (Dkt. No. 70-1 at 3-5.)  The term "male connector" appears in claims 1 and 8 of the '026 patent, claim 1 of the '515 patent, and claims 1, 2, 5, 9 of the '309 patent.  (*Id*.)  The term "male portion" appears in claim 11 of the '026 patent.  (*Id*.)

#### 1. Indefiniteness

Because the male and female connectors are mirror images of each other, and for the reasons discussed above in connection with respect to female connectors, the Court finds the terms "male connector" and "male portion" are not indefinite.

#### 2. Claim Construction

Plaintiff proposes an alternative construction for the terms "male connector" and "male portion": "a connector that protrudes from the surrounding area for mating with a connector having a complementary shaped inward recess." (Dkt. Nos. 70-1 at 3; 121 at 73.)  The Court adopts this construction, which will be helpful to the jury because it succinctly emphasizes the complementary nature of male and female connectors.

### E.      "The adapter is configured so that, when coupled to the portable electronic device, the contactor surface is disposed further than any other portion of the adapter from the portable electronic device to form, with the contacts, a male connector configured for coupling to connector contracts within a female receptacle of the external connector"

Defendant contends that this passage is indefinite due to the indefiniteness of the terms "adapter" and "male connector". (Dkt. Nos. 70-1 at 14-15; 121 at 108-109.)  As previously identified, the parties agree upon a construction for the term "adapter" and, for the reasons

discussed above, the term "male connector" is not indefinite. *See supra* Section IV.D. Having already construed the two terms allegedly rendering this passage indefinite, and the Court declines to further construe any other terms contained therein.

### F. "Base Receiver"

The next term disputed by the parties is "base receiver." (Dkt. No. 70-1 at 8-9.) The term appears in claims 1, 8, and 10 of the '026 patent and claims 1, 5, and 8 of the '309 patent. (*Id.*)

#### 1. Indefiniteness

Defendant contends the term "base receiver" is indefinite because it not defined by the specification and because the terms "base receiver" and "tray" are used inconsistently in the specification. (Dkt. No. 117 at 24-25.)

Plaintiff contends a skilled artisan would understand the term "base receiver" is used in the Patents-In-Suit according to its plain and ordinary meaning. (Dkt. No. 118 at 16.) Plaintiff contends while the term has multiple embodiments in the '026 and '309 patents, the term is not used inconsistently, and having multiple embodiments does not render a term indefinite. (Dkt. No. 121 at 110-111.) Plaintiff contends the structural requirements for the "base receiver" as described in each patent are recited in the claims. (Dkt. No. 118 at 13-14.)

With respect to Defendant's contentions concerning the inconsistent use of "base receiver" and "tray", a party challenging patent validity on indefiniteness grounds carries the burden of proof. *Bosch Auto. Serv. Sols., LLC v. Matal*, 878 F.3d 1027, 1040 (Fed. Cir. 2017). The Court finds Defendant has not met its burden. *See National Products, Inc.*, 2022 WL 2304114 at *9 (rejecting similar arguments regarding the term base receiver with respect to the '026 patent as "premised on thin evidence and overstated argument.")

The fact that a certain claim term is not defined by the specification does not necessarily render that term indefinite. *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1366-1368 (Fed. Cir. 2017); *Fiber, LLC v. Ciena Corp.*, No. 13-cv-00840-PABKLM, 2017 WL 3896443, at *11-12 (D. Colo. Sept. 6, 2017) (declining to find a term that did not appear in the specification indefinite because a person of ordinary skill in the art would be able to discern its meaning).

Further, the fact that the term "base receiver" has multiple embodiments in the two patents at issue does not necessarily render the term indefinite. *Maxill Inc. v. Loops, LLC*, Case No. C17-1825-TSZ, Dkt. No. 71 at 9 (W.D. Wash. July 11, 2019) ("the specification's reference to an alternative embodiment . . . does not render the terms indefinite"); *CyWee Grp. v. Huawei Device Co.*, No. 17-CV-00495 WCB-RSP, 2018 WL 6419484, at *20 (E.D. Tex. Dec. 6, 2018) ("That the claim is drafted broadly enough to cover multiple embodiments does not render the claim indefinite."); *dunnhumby USA, LLC v. emnos USA Corp.*, No. 13- CV-0399, 2015 WL 1542365, at *29 (N.D. Ill. Apr. 1, 2015) ("A claim is not indefinite merely because it covers broad possibilities and encompasses multiple embodiments.")

For purposes of the definiteness inquiry, the problem patentees face by using descriptive words in their claims is not the potential breadth of those claims, but whether the use of descriptive phrasing in the claim results in a claim that "fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1347 (Fed. Cir. 2022). Here, a person of ordinary skill in the art would be able to ascertain the meaning of "base receiver" based on the illustrations in the patent and the description of the structural requirements for base receivers in the claims.

Accordingly, the Court finds that the term "base receiver" is not indefinite.

2. <u>Claim Construction</u>

To emphasize the distinction between a "base receiver" and a "female base receiver", the Court adopts Plaintiff's proposed alternative construction of the former term: "a portion of a docking cradle adapted to receive the electronic device cover."

**G.    "Female Base Receiver"**

The next term disputed by the parties is "female base receiver." (Dkt. No. 70-1 at 9-10.) The term appears in claims 9 and 19 of the '515 patent and claims 8 and 17 of the '334 patent. (Dkt. No. 118 at 17.)

Defendant argues "female base receiver" is indefinite for the same reasons it contends "base receiver" is indefinite. (Dkt. No. 121 at 122-123.) For the reasons discussed above, the term "base receiver" is not indefinite and therefore the term "female base receiver" also is not indefinite. However, to emphasize the distinction between a "base receiver" and a "female base receiver", the Court adopts Plaintiff's proposed construction of the latter term: "a recessed portion of a docking cradle adapted to receive the electronic device."

**H.    "Tray"**

The next term disputed by the parties is "tray." (Dkt. No. 70-1 at 13-14.) The term appears in claims 8 and 18 of the '515 patent and claims 7 and 16 of the '334 patent. (*Id*.)

Defendant contends the term "tray" is indefinite because it not defined by the specification and because the term is used inconsistently in the specification. (Dkt. No. 117 at 24-25.) As already stated, a term is not indefinite merely because it is not defined in the specification or because a patent contains examples of multiple embodiments. Defendant has not carried its burden of establishing indefiniteness. The Court finds the term "tray" is not indefinite and adopts the plain and ordinary meaning of this term.

**I.     "A Rim to Guide Proper Mating" and "The Rim is Recessed with Respect to the Docking Support Surface"**

The next terms disputed by the parties are "a rim guide to proper mating" and "the rim is recessed with respect to the docking support surface." (Dkt. No. 70-1 at 10-12.) The first term appears in claims 1, 8, and 10 of the '026 patent, claims 1 and 11 of the '515 patent, and claims 1 and 10 of the '334 patent. (*Id*.) The second term appears in claims 4 and 15 of the '026 patent. (*Id*.)

Defendant contends the disputed "rim" claim terms were not present in the applications leading to the Patents-In-Suit prior to the filing of the '026 patent and that Plaintiff now improperly expands the definition beyond the original claims, rendering the term indefinite. (Dkt. No. 117 at 17.) Defendant also argues "rim" is used inconsistently as six different structures use the term "rim." (*Id*. at 18-21.) Plaintiff argues that the term "rim" is readily understandable (Dkt. No. 121 at 126-127) and that Judge Conley previously rejected Defendant's arguments. (Dkt. No. 113 at 121–124.)

The Court finds Judge Conley's reasoning convincing, "[w]hile the same ["rim"] numeral is . . . sometimes used to refer to several, different 'rims' . . . , each time, the word 'rim' appears to be used according to its plain and ordinary meaning, and the different language used does not necessarily cause undue confusion. After all, 'a claim is not indefinite just because it is broad.'" *National Products, Inc.vv. Proclip USA, Inc.,* 2022 WL 2304114 at *8 (citation omitted). A layperson would instinctively understand what a "rim" is, and a person of ordinary skill in the art would be informed, with reasonable certainty, about the scope of the invention and its ability to capture multiple embodiments.

Accordingly, the Court finds the term "rim" is not indefinite, and adopts the plain and ordinary meaning of this term.

ORDER REGARDING CLAIMS CONSTRUCTION - 15

**J.    "A Docking Support Surface Extending Away from the Back Support Surface"**

The next term disputed by the parties is "a docking support surface extending away from the back support surface." (Dkt. No. 70-1 at 12-13.)  The term appears in claims 1, 8, and 14 of the '026 patent:

Defendant claims "'docking support surface' is indefinite under 35 USC § 112(b) because there was no support for the claimed version of 'docking support surface' prior to the addition of the new language, so NPI improperly expanded the definition beyond the original claims, which renders the rim claim term indefinite." (Dkt. Nos. 117 at 26; 121 at 136-137.) Notwithstanding, the Joint Claim Construction Chart never claimed "docking support surface" was indefinite.  (*See* Dkt. 70-1 at 12–13.)  Defendant's expert also never claimed this term was indefinite.  (Dkt. No. 71-3 at 21, 87–91.)  In fact, Defendant's expert appears to have understood the term in the embodiments described in the specifications and offered her own construction of this term.  (*Id*. at 91.)

The Court finds the terms "docking support surface" and back support surface" are sufficiently definite for a person of ordinary skill in the art to be able to practice the '026 patent. Moreover, the Court finds Defendant's proposed construction lengthy, confusing, and unhelpful to a jury.  *Control Res.*, 133 F. Supp. at 127.

Accordingly, the Court adopts the plain and ordinary meaning of the terms "docking support surface" and back support surface."

V.     CONCLUSION

For the foregoing reasons, the Court rules as follows:

1) The term "adapter" is construed as follows: "a device positioned in a removable cover that electrically connects otherwise incompatible connectors."

2) The term "detachable" in the phrase "the adapter is detachable from the hard shell by a user" is determined to be consistent with its plain and ordinary meaning.

3) The term "female" in "female connector", "female portion", and "female receptacle" is determined to be consistent with its plain and ordinary meaning. However, to assist the trier of fact, "female connector", "female portion", and "female receptacle" shall be constructed as follows: "an inwardly recessed connector for mating with a complementary shaped protruding connector."

4) The term "male" in "male connector" and "male portion" are determined to be consistent with its plain and ordinary meaning. However, to assist the trier of fact, "male connector" and "male portion" shall be construed as follows: "a connector that protrudes from the surrounding area for mating with a connector having a complementary shaped inward recess."

5) The term "base receiver" is construed as follows: "a portion of a docking cradle adapted to receive the electronic device cover."

6) The term "female base receiver" is construed as follows: "a recessed portion of a docking cradle adapted to receive the electronic device."

7) The term "tray" is determined to be consistent with its plain and ordinary meaning.

8) The term "rim" in the phrases "a rim guide to proper mating" and "the rim is recessed with respect to the docking support surface" is determined to be consistent with its plain and ordinary meaning.

9) The terms "docking support surface" and "back support surface" in the phrase "a docking support surface extending away from the back support surface" are determined to be consistent with their plain and ordinary meanings.

Dated this 3rd day of January, 2023.

David G. Estudillo
United States District Judge

ORDER REGARDING CLAIMS CONSTRUCTION - 18