UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NATIONAL PRODUCTS INC.,

Plaintiff,

v.

INNOVATIVE INTELLIGENT PRODUCTS LLC d/b/a GPS LOCKBOX,

Defendant.

CASE NO. 2:20-cv-00428-DGE

ORDER ON DISCOVERY MOTIONS

Plaintiff, National Products Inc. ("National Products" or "NPI"), a designer and manufacturer of docking cradles and protective cover products, alleges infringement of four patents by Defendant Innovative Intelligent Products, d/b/a GPS Lockbox. Presently before the Court are six discovery related motions filed by the parties. (Dkt. Nos. 130, 146, 149, 150, 165, 170.) This Order disposes of all six discovery related motions.

# I. MOTIONS

## A. Plaintiff's Motion for Sanctions and to Compel Discovery (Dkt. No. 130)

Plaintiff seeks sanctions against Defendant for failure to provide timely responses to Plaintiff's Second Set of Interrogatories and Third Set of Requests for Production.[1] (Dkt. No. 130 at 2.) Plaintiff argues Defendant cannot demonstrate good cause for failure to respond to its discovery requests and asks the Court to compel Defendant to provide complete responses within five days of the Court entering its order. (*Id.*)

1. Procedural/Factual Background

Plaintiff served its Second Set of Interrogatories and Third Set of Requests for Production on Defendant via email on February 28, 2023. (Dkt. Nos. 131-1; 131-2.) The same day, Plaintiff's counsel sent Defendant's counsel an email proposing the parties supplement their prior interrogatory responses by April 14, 2023. (Dkt. No. 131-3 at 2.) Plaintiff contends Defendant's counsel never responded to this email. (Dkt. No. 131 at 2.) On March 13, 2023, Plaintiff's counsel emailed Defendant's counsel to memorialize the parties' agreement to exchange supplemental interrogatory responses, and to update any other discovery responses wherein a party's response might no longer be accurate, by April 21, 2023. (Dkt. No. 131-4 at 2.) Plaintiff identified prior responses to specific interrogatories that it was requesting be supplemented by April 21. (*Id.*) The email makes no mention of the Second Set of Interrogatories and Third Set of Requests for Production. (*Id.*)

---

[1] On July 20, 2023, Plaintiff filed a notice with the Court stating it had received some of the discovery requested in its motion. (Dkt. No. 185.) However, Plaintiff stated counsel for Defendant refused to provide the remaining discovery, and asks the Court to impose sanctions and compel Defendant to produce all documents response to requests for production 85, 86, 87, 88 and 91. (*Id.*)

On April 3, 2023, Plaintiff's counsel informed Defendant it had failed to respond to the Second Set of Interrogatories and Third Set of Requests for Production and, therefore, Defendant had waived all objections to those discovery requests. (Dkt. No. 131-5 at 2–3.) Plaintiff stated its intention to file a motion for sanctions if Defendant did not immediately respond to the discovery requests. (*Id*. at 3.) Plaintiff also demanded Defendant make itself available to confer no later than noon on April 5, 2023. (*Id*.)

On April 4, 2023, Defendant's counsel responded, asserting the agreed April 21, 2023 deadline to supplement prior interrogatory responses also applied to the February 28, 2023 discovery requests. (Dkt. No. 131-6 at 2.) The same day, Defendant provided responses to Plaintiff's Second Set of Interrogatories and Third Set of Requests for Production. (Dkt. Nos. 131-7; 131-8.) Plaintiff's counsel asserted the responses were deficient, that Defendant ignored the prior request to confer, and that Defendant "simply fabricated a justification for failing to timely respond" to its discovery requests. (Dkt. No. 131-9 at 6.)

Defendant does not dispute its responses to Plaintiff's discovery requests were untimely. Instead, Defendant argues its failure to provide timely responses was merely "a harmless one business day delay" stemming from a misunderstanding on the part of Defendant's counsel concerning the deadlines. (Dkt. No. 136 at 6.)

In its April 3, 2023 letter, Plaintiff sought to confer with Defendant no later than April 5, 2023. (Dkt. No. 131-5 at 3.) Plaintiff re-iterated this request in an email to Defendant on April 4, 2023. (Dkt. No. 131-10 at 4.) Defendant's counsel responded via email on April 5, 2023, stating he was unable to confer because his back went out and he was unable to sit at his computer for more than 5 minutes at a time. (*Id*. at 2.) Defendant's counsel further stated he would be unable to meet and confer for two weeks because he was going to be out of town. (*Id*.)

Defendant's counsel sent another email later that day stating that he remained "available for a meet and confer at a reasonable time in view of my general unavailability, if one is needed." (Dkt. No. 131-9 at 5.)

In the declaration accompanying its motion, Plaintiff certified it attempted to confer in good faith several times with Defendant to resolve the issues raised in its motion, but that Defendant did not respond to Plaintiff's request or provide a time when it would be available to confer. (Dkt. No. 131 at 5–6.)

2. Analysis

Defendant was required to serve its answers and any objections within 30 days after being served with interrogatories or requests for production. Fed. R. Civ. P. 33(b)(2); 34(b)(2). A party seeking discovery may move for an order compelling an answer, designation, production, or inspection if a party fails to answer an interrogatory submitted under Federal Civil Rule 33 or fails to produce documents as requested under Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(iii)-(iv).

Under both Rules 33 and 34, "a failure to object to discovery requests within the time required constitutes a waiver of any objection." *Photography By Frank Diaz LLC v. Friends of David Schweikert*, Case No. CV-22-01170-PHX-JAT, 2023 WL 3078664 at * 1 (D. Ariz. April 25, 2023), quoting *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992). However, Rule 33 allows courts to excuse such a waiver "for good cause." Fed. R. Civ. P. 33(b)(4). While Rule 34 does not contain an analogous provision, courts that have considered the issue "generally agree that there is no reason to treat waiver under Rule 34 any different than Rule 33." *Liguori v. Hansen*, No. 2:11-cv-00492-GMN-CWH, 2012 WL 760747 at *12 (D. Nev. Mar. 6, 2012) (collecting cases). Accordingly, courts "retain discretion to relieve a late or

non-responding party from the potentially harsh consequences associated with waiver." *Id*. at *11.

Defendant was served on February 28, 2023 with Plaintiff's Second Set of Interrogatories and Third Set of Requests for Production. Defendant's answers and responses were due March 30, 2023. Contrary to Defendant's assertion, Defendant's response was three days late, not one. And, because Defendant asserts it understood the deadline to be April 21, 2023, it is likely Defendant's responses would have been several weeks late rather than several days had Plaintiff's counsel's not contacted Defendant. The March 13, 2023 email makes no mention of the Second Set of Interrogatories or the Third Set of Requests for Production. Rather, it specifically references responses to specific interrogatories to which Defendant had previously responded. To the extent Defendant's counsel believed the March 13, 2023 email encompassed the Second Set of Interrogatories or the Third Set of Requests for Production, defense counsel should have sought clarification.

Defendant has not established good cause for failing to timely object to Plaintiff's discovery requests, and has therefore waived its objections. *Gee v. Gallardo*, Case No. CV-18-2717 JGB (PVC), 2020 WL 2083018, at *2 (C.D. Cal. Mar. 5, 2020). Defendant SHALL provide further responses, without objections, to requests for production 85, 86, 87, 88 and 91 within five days of this order.

Plaintiff also asks the Court to sanction Defendant for refusing to confer regarding this motion pursuant to Local Civil Rule 37(a)(1) and Local Civil Rule 11. (Dkt. No. 130 at 2–3.) Plaintiff seeks an award of attorney fees and costs accrued in filing this motion. (*Id*.)

Plaintiff is required to confer, or attempt to confer, with the "person or party failing to make disclosure or discovery in an effort to resolve the dispute" before asking the Court to

compel discovery. Local Civil Rule 37(a)(1). A good faith effort to confer "requires a face-to-face meeting or a telephone conference." *Id*. If the court finds that counsel for any party willfully refused to confer, failed to confer in good faith, or failed to respond on a timely basis to a request to confer, the court may impose sanctions pursuant to Local Civil Rule 11. *Id*.

Plaintiff contends Defendant's counsel refused Plaintiff's first request to confer, stating it was only willing to confer at an unspecified "reasonable time" in light of his "general unavailability." (Dkt. No. 130 at 3.) Defendant has either not responded to requests from Plaintiff to meet and confer, refused to confer, refused to commit to a date and time for the conferral, or otherwise acted in a manner that made it difficult for the parties to confer and resolve their issues efficiently. (Dkt. No. 131 at 6–13.)

Plaintiff argues Defendant cannot unilaterally determine that a conference is inappropriate and that its conduct lies outside the reasonable bounds of litigation behavior. (*Id*. at 4.) Defendant argues it is Plaintiff who has refused to meet and confer. (Dkt. No. 136 at 4–6.) Defendant contends it agreed to "any appropriate meet and confer" and that Plaintiff failed to certify it conferred or attempted to confer with Defendant before filing its motion. (*Id*. at 5.)

Defendant's argument is unpersuasive. Defendant's counsel did not agree to a face-to-face meeting or a telephone conference as required by the local rules. Defendant did not propose any specific date or time to conduct a meeting, which could have been satisfied via a teleconference. Counsel's personal issues and travel plans do not permit him to indefinitely evade conferrals designed to expedite the discovery process. If Defendant's counsel has other commitments or concerns that make it impossible for him to fully engage in this case, he should take steps to inform his client, opposing counsel, and the Court.

The Court finds Defendant failed to confer in good faith with respect to this motion. Pursuant to Local Civil Rules 11(c) and 37(a)(1), Plaintiff's request for sanctions is GRANTED. Within 10 days of this order, Plaintiff may file a motion for attorney fees incurred in bringing this motion (Dkt. No. 130). No other sanctions are imposed.

**B. Plaintiff's Motion to Compel Further Deposition Testimony (Dkt. No. 146)**

Plaintiff asks the Court to compel further deposition testimony from Kristopher Gebow and his company, Gebow Design Services, LLC. (Dkt. No. 146 at 1.) Plaintiff argues Defendant's counsel, citing attorney-client privilege, improperly instructed Gebow not to answer questions about email and phone conversations Gebow had with Defendant concerning documents related to Defendant's counterclaims. (*Id.*)

1. Procedural/Factual Background

Gebow/Gebow Design Services LLC worked with GPS Lockbox from 2012 or 2013 through January 2023. (Dkt. No. 158 at 1–2.) Gebow was GPS Lockbox's primary designer, and about 40 percent of his business income came from GPS. (*Id*. at 1.) Gebow understood his work for GPS Lockbox was confidential. (*Id*. at 2.) Gebow did not have an express independent contractor or employee agreement with GPS, but notes he worked closely with GPS employees to design products, and understood his company and GPS had "a close independent contractor relationship with obligations beyond those of a routine outside service provider." (*Id*. at 3.) Defendant asserts Gebow was "more than just a routine outside service provider" based on Gebow working closely with Defendant "to develop and implement GPS Lockbox's designs." (Dkt. No. 159 at 2.)

Gebow testified he did not have an attorney-client relationship with Defendant's counsel. (Dkt. No. 147-1 at 3.) He stated several times that he had not engaged the services of

Defendant's counsel and that Defendant's counsel was not his attorney. (*Id.* at 3–4, 7.) Defendant's counsel stated he was not representing Gebow personally, but only in Gebow's capacity as someone associated with GPS Lockbox. (*Id.*) After speaking with Defendant's counsel, Gebow changed his understanding of the attorney-client relationship between him and Defendant's counsel. (*Id.* at 14.)

2. Analysis

Defendant argues attorney-client privilege applies to Gebow because he is the "functional equivalent" of a GPS Lockbox employee.[2] (Dkt. No. 157 at 2.)

The attorney-client privilege is applicable to communications between a corporation's attorney and independent contractors or consultants who are the "functional equivalent" of corporate employees. *United States v. Graf*, 610 F.3d 1148, 1156, 1158–1159 (9th Cir. 2010) (adopting the principles expressed in *In re Bieter Company*, 16 F.3d 929, 938–940 (8th Cir. 1994)). A third party need not be a "traditional employee," or even a "traditional consultant" to qualify as the functional equivalent of an employee. *Memry Corp. v. Kentucky Oil Tech., N.V.*, Case No. C04-03843 RMWHRL, 2007 WL 39373, at *3 (N.D. Cal. Jan. 4, 2007). This is because "too narrow a definition of 'representative of the client' will lead to attorneys not being able to confer confidentiality with nonemployees who, due to their relationship to the client, possess the very sort of information that the privilege envisions flowing most freely." *Bieter*, 16 F.3d at 937–938.

> [I]t is only natural that,' just as '[m]iddle-level—and indeed lower-level—employees would have the relevant information needed by corporate counsel if he is adequately to advise the client with respect to actual or potential difficulties, so

[2] In its response, Defendant again argues Plaintiff did not certify it met and conferred with Defendant before filing this motion. (Dkt. No. 157 at 1–2.) Plaintiff certified, in a declaration, that it conferred with counsel for Defendant via telephone and email to resolve the issues raised in its motion. (Dkt. Nos. 147 at 2; 147-7; 147-8.)

> too would nonemployees who possess a significant relationship to the [client] and the [client]'s involvement in the transaction that is the subject of legal services.

*Id*. at 938 (cleaned up).

The dispositive question is the individual's relationship to the company, and whether he or she "possesses information about the company that would assist the company's attorneys in rendering legal advice." *Shopify Inc. v. Express Mobile, Inc.*, Case No. 20-mc-80091-JSC, 2020 WL 4732334 at * 6 (N.D. Cal. Aug. 14, 2020) (internal citation omitted). "[I]f so, the individual may be found to be a functional employee." *Id*.

Plaintiff asserts that "to be considered a functional employee of a company, an individual's relationship with the company must be agent-like or more." (Dkt. No. 164 at 7.)

Despite the absence of a formal written agreement outlining the precise nature of Gebow's relationship with the Defendant, the Court concludes Gebow was/is a functional employee for purposes of the subject of this litigation. From the record presented, it appears Plaintiff seeks information from Gebow about his role in the design of one or more of the products at issue in this litigation. It appears Gebow was Defendant's primary designer. (Dkt. Nos. 159 at 1–2; 158 at 2.) Gebow understood his work with Defendant was confidential and did not disclose his work to others. (Dkt. Nos. 158 at 2; 160-1 at 18–19.)

Defendant's counsel began communicating with Gebow "shortly after NPI filed this action[.]" (Dkt. No. 157 at 4.) The purpose of those communications was related to "when the first prototype of the Ultra Pro 7 with magnetic connection was first made." (*Id*.) In other words, Defendant's counsel contacted Gebow to discuss his work on a product (or products) that was the subject of this litigation. The Court concludes it would only be natural that just as regular employees would have the relevant information needed by defense counsel to adequately advise Defendant with respect to actual or potential difficulties, so too would Gebow, who

possessed a significant relationship with Defendant and the development of a product that is the subject of this litigation.

Plaintiff's motion to further compel deposition testimony of Gebow is DENIED.

**C. Defendant's Motion for Disqualification and Motion to Seal (Dkt. Nos. 149, 150)**

Defendant filed a motion to disqualify Fenwick & West ("Fenwick") as counsel for Plaintiff. (Dkt. No. 150 at 2.) Defendant has also filed a motion to file under seal documents related to its motion. (Dkt. No. 149.)

1. Procedural/Factual Background

On April 7, 2023, GPS Lockbox produced 516 pages of documents in response to Plaintiff's discovery requests. (Dkt. No. 150 at 2.) On May 8, 2023, counsel for GPS Lockbox realized 85 of these documents contained materials covered by attorney-client and work product privileges. (*Id.*; Dkt. No. 151 at 2.)

Plaintiff received notice of Defendant's inadvertent production of privileged material via email on May 9, 2023. (Dkt. No. 151-1 at 8–9.) Defendant's email stated that "[i]t should be apparent on the face of the majority if not all of the documents that they were Attorney-Client Privileged and/or work product protected, for example by the named senders and/or recipients of emails." (*Id*. at 8.) Defendant demanded that Plaintiff "confirm that you have not reviewed the documents in the attached list, will completely delete them and will not use them in any manner in this litigation." (*Id*. at 9.)

Plaintiff responded to Defendant's email several minutes later, asking Defendant to provide a privilege log and stating it would not review the allegedly privileged documents until it received the log. (*Id*. at 8.) Defendant declined to produce a privilege log and re-stated its previous demand. (*Id*. at 7.) Plaintiff responded by agreeing to delete the documents and not use

them in the case if Defendant would confirm the documents were "all post-complaint, attorney-client privileged and/or work product documents." (*Id.*) Plaintiff also requested a better explanation for Defendant's privilege claims and asked Defendant to distinguish between pre-complaint and post-complaint documents. (*Id*. at 6.)

Defendant responded on May 10, 2023, stating all the documents at issue were generated after Plaintiff's complaint was filed. (*Id*. at 6.) Defendant explained the inadvertent production occurred because the production tool used by Defendant "experienced a glitch and inadvertently assigned Bates numbers incorrectly." (*Id*. at 5.) Plaintiff responded on May 11, 2023, confirming it would delete the documents at issue and would not use them in this case. (*Id*.)

On May 15, 2023, Defendant sent Plaintiff an email seeking clarification concerning whether Plaintiff had reviewed any of Defendant's privileged material. (*Id*. at 4.) Plaintiff responded the same day, stating that it had already fulfilled its obligations under Rule 26(b)(5)(B). (*Id*. at 3.) On May 16, 2023, Defendant replied, arguing the language of Rule 26(b)(5)(B) did not relieve Plaintiff of its obligations under the Washington Rules of Professional Conduct. (*Id*. at 2.)

2. Analysis

Defendant contends Plaintiff's response to the disclosure of this privileged information merits disqualification.

Federal courts must apply state law in determining matters of disqualification. *In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000). "Disqualification of counsel is a drastic remedy that exacts a harsh penalty from the parties as well as punishing counsel; therefore, it should be imposed only when absolutely necessary." *Matter of Firestorm 1991*, 916 P.2d 411, 416 (Wash. 1996). Washington courts are reluctant to disqualify an attorney "absent

compelling circumstances." *Pub. Util. Dist. No. 1 of Klickitat Co. v. Int'l Ins. Co.*, 881 P.2d 1020, 1033 (Wash. 1994).

"In determining whether an attorney's representation of a particular client violates the attorney's ethical responsibilities, the [c]ourt first refers to the local rules regulating the conduct of members of its bar." *United States ex rel. Lord Elec. Co., Inc. v. Titan Pac. Constr. Corp*., 637 F. Supp. 1556, 1560 (W.D. Wash. 1986). Under the local civil rules, attorneys practicing in the Western District of Washington must be familiar with and comply with the "Washington Rules of Professional Conduct (the 'RPC'), as promulgated, amended, and interpreted by the Washington State Supreme Court ... and the decisions of any court applicable thereto." Local Civil Rule 83.3(a). Accordingly, the Court begins its analysis with the RPC.

Under RPC 4.4(b), a lawyer who receives a document or electronically stored information relating to the representation of the lawyer's client and knows or reasonably should know that the document or electronically stored information was inadvertently sent "shall promptly notify the sender." Comment 2 to RPC 4.4(b) states that whether a lawyer is required to take additional steps, such as returning the document or electronically stored information, is a matter of law beyond the scope of the RPCs, as is the question of whether the privileged status of a document or electronically stored information has been waived.

On March 24, 2022, the Court entered a stipulated protective order, which provides that when a producing party gives notice to receiving parties that certain inadvertently produced material is subject to a claim of privilege or other protection, "the obligations of the receiving

parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B)."[3] (Dkt. No. 94 at 9.) Rule 26(b)(5)(B) provides that:

> If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

With respect to Plaintiff's obligation under RPC 4.4(b) to "promptly" notify Defendant of the inadvertent production of privileged material, Plaintiff contends "no one" at Fenwick reviewed or printed the materials produced by Defendant between April 7, 2023 and May 9, 2023. (Dkt. No. 175 at 2.) Plaintiff further asserts no one at Fenwick attempted to "mine" metadata from Defendant's production. (*Id.*) Plaintiff claims that it performed "a cursory, quality control type inspection on each batch" as it was produced to confirm that Defendant's production was complete. (*Id.*)

Plaintiff contends its initial review of Defendant's production consisted of "quickly skimming through a small portion of the native files in a windows folder preview pane." (*Id.*) Plaintiff estimates it "skimmed" 25 percent of the emails contained in GPS Lockbox's production and 10 percent of the non-email documents. (*Id.* at 3.) Plaintiff claims none of the documents reviewed during this process were marked "Privileged," "Attorney-Client Communication," "Work Product," and that none of the 85 privileged documents identified by Defendant were ever printed, discussed, or emailed. (*Id.*) Defendant argues Plaintiff performed

[3] The parties also agreed to the entry of a non-waiver order under Federal Rule of Evidence 502(d).

more than a cursory review of the documents produced, and that the chances of Plaintiff not seeing any of the 85 allegedly privileged documents is approximately 1.7 in a trillion. (Dkt. No. 177 at 5.)

"[B]ecause a motion to disqualify is often tactically motivated, and can be disruptive to the litigation process, it is a drastic measure that is generally disfavored." *Certain Underwriters at Lloyd's, London v. Argonaut Ins. Co.*, 264 F.Supp.2d 914, 918 (N.D. Cal. 2003). "The cost and inconvenience to clients and the judicial system from misuse of the rules for tactical purposes is significant." *Optyl Eyewear Fashion Int'l. Corp. v. Style Cos., Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985). Because of this potential for abuse, disqualification motions should be subjected to particularly strict judicial scrutiny. *Id.*

Defendant's claim that Plaintiff acted improperly after receiving allegedly privileged materials is based to a significant extent on supposition and statistical probabilities rather than actual evidence of misconduct. Once Plaintiff was notified of Defendant's inadvertent production, the parties conferred, and after receiving clarification, Plaintiff deleted the documents at issue and confirmed it would not use them in this case. Plaintiff's response was consistent with the requirements of Rule 26(b)(5)(B). The Court sees no basis to disqualify Plaintiff's counsel and questions the need for the filing of this motion.

Accordingly, Defendant's motion to disqualify Fenwick & West (Dkt. No. 150) is DENIED. Defendant's motion to seal (Dkt. No. 149) is GRANTED.

**D. Defendant's Motion to Compel Production of NPI Calendars (Dkt. No. 165)**

Defendant moves to compel production of daily calendars showing meetings at Plaintiff's offices from February 1, 2014 through October 31, 2014. (Dkt. No. 165 at 3.) Defendant argues several of its defenses and counterclaims are based on what occurred at a meeting that allegedly

took place at Plaintiff's Seattle headquarters in March or April of 2014. (Dkt. No. 165 at 5.) Defendant contends Plaintiff's calendars for this period will tend to prove the meeting occurred and will substantiate Defendant's version of events while calling into question Plaintiff's account. (*Id*. at 6.)

A party may obtain discovery regarding any nonprivileged information that is relevant to any claim or defense in his or her case. Fed. R. Civ. P. 26(b)(1). Once the party seeking discovery has established the request meets this relevancy requirement, "the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." *Bryant v. Ochoa*, Case No. 07cv200 JM (PCL), 2009 WL 1390794, at *1 (S.D. Cal. May 14, 2009) (internal citations omitted).

Plaintiff agrees evidence concerning whether the meeting occurred and what was discussed at the meeting is relevant to Defendant's defenses and counterclaims. (Dkt. No. 172 at 1.) However, Plaintiff argues it has produced every communication between the relevant parties from October 2012 forward and every electronic document and email containing terms relevant to the alleged meeting. (*Id*. at 1–2.) Plaintiff contends Defendant's request for its calendars is burdensome, disproportionate to the needs of the case, and will require Plaintiff to collect, review, and produce thousands of irrelevant calendar entries. (*Id*. at 3.) Plaintiff claims discovery in this case and two related cases establishes the meeting could not have taken place at NPI's headquarters in 2014. (*Id*. at 4.)

Interestingly, Defendant's motion concedes "the emails [already produced] demonstrate that the meeting and the magnetic UP7 disclosure took place[.]" (Dkt. No. 165 at 10.) Defendant's argument for seeking the calendars is that "Emails are not calendars" and that the calendars will contradict NPI's assertions that the meeting and disclosure never took place. (*Id*.

at 10.) In Defendant's mind, the calendars will "tend to prove" the claims and defenses in this case.

Both parties concede the discovery conducted to date is sufficient to resolve questions concerning the 2014 meeting, even if they have different positions concerning what inferences are supported by the evidence. The Court finds producing NPI's calendars will be unduly burdensome on Plaintiff and likely would not help resolve any issues in this case. The Court further finds Defendant's motion to compel production of NPI's calendars is not proportional to the needs of the case. *See e.g. Fox v. State Farm Ins. Co*., Case No. C15-0535-RAJ, 2016 WL 304784, at *1 (W.D. Wash. Jan. 26, 2016).

Accordingly, Defendant's motion to compel production of NPI's calendars (Dkt. No. 165) is DENIED.

**E. Plaintiff's Motion to Strike Deposition Errata (Dkt. No. 170)**

Plaintiff moves to strike 34 entries from the errata sheet of Gebow Design Services' deposition. (Dkt. No. 170 at 2.) Plaintiff contends these entries "attempt to improperly write in brand-new, substantive testimony that adds to, modifies, or contradicts what Gebow said under oath, offer irrelevant commentary on the transcript, or reflect an attempt by Gebow to re-interpret the questions asked by counsel." (*Id.*)

Rule 30(e)(1) provides that, upon request at the deposition, the deponent has thirty days after the deposition transcript becomes available to review the transcript and "if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them." Fed. R. Civ. P. 30(e)(1)(B).

Rule 30(e) should be used "for corrective, and not contradictory, changes." *Hambleton Bros. Lumber Co. v. Balkin Enters.,* 397 F.3d 1217, 1226 (9th Cir. 2005). The relevant inquiry

for the Court is "whether the alterations have a legitimate purpose" or are instead offered to rewrite testimony that was previously given under oath. *Id.* at 1224–1225. "The Rule cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination." *Greenway v. International Paper Co.*, 144 F.R.D. 322, 325 (W.D. La. 1992); *see also Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1242 n.5 (10th Cir. 2002). A change of substance which actually contradicts the transcript is impermissible unless it can plausibly be represented as a correction of an error in transcription. *Thorn v. Sundstrand Aerospace Corp.*, 207 F.3d 383, 389 (7th Cir. 2000). "Even where a court finds that errata are not shams" used to evade summary judgment, "the court may still strike portions that constitute contradictory rather than corrective changes." *Karpenski v. Am. Gen. Life Companies, LLC*, 999 F. Supp. 2d 1218, 1224 (W.D. Wash. 2014).

"[T]o survive, the errata must, at minimum, still be 'corrective,' targeted at ameliorating some defect, not new and more artful responses to questions previously propounded." *Blair v. CBE Grp. Inc.*, Case No. 13-cv-00134, 2015 WL 3397629, at *6 (S.D. Cal. May 26, 2015) (quoting *Garcia*, 299 F.3d at 1242 n.5)). "It makes no sense to allow a deponent to change sworn testimony merely because after the deposition he wishes that he had said something other than what was said … [n]or can the errata process permitted by Rule 30(e) be used to allow post-deposition revision of testimony to conform a witness' testimony to enhance a party's case." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 277 F.R.D. 286, 297 (E.D. Va. 2011).

Here, Plaintiff contends errata entries 4–7, 9–11, 16–17, 19–20, 22–27, 30–32, and 34–40 are substantive and contradictory additions that are improper under Rule 30(e). (Dkt. No. 170 at

3.) Plaintiff also argues entries 13, 18, 28, 33 "appear to be notes of Gebow's musings as he read through the transcript." (*Id.*) Defendant argues the errata sheet provides comments and corrections to correct errors in the transcript and to provide helpful information. (Dkt. No. 180 at 1.) Defendant contends the errata sheet does not contradict Gebow's deposition testimony. (*Id.* at 2.)

The Court has reviewed the errata entries cited by Plaintiff (entries 4–7, 9–11, 16–17, 19–20, 22–27, 30–32, and 34–40[4]) and finds they are substantive additions or modifications to Gebow's testimony, not corrections. They appear to significantly rewrite Gebow's testimony, in many cases doing so in a manner favorable to Defendant. Gebow (and/or Defendant) appears to have turned the deposition into a "take home examination", while attempting to amend Gebow's testimony to better reflect Defendant's litigation position.

With respect to errata entries 13, 18, 28, 33, these appear to be Gebow's opinions concerning the questions posed by Plaintiff's counsel or comments concerning the accuracy of the deposition transcript. Entry 13 questions whether Gebow actually used the word "282" as reflected in the deposition transcript. (Dkt. No. 171-1 at 3.) Entry 18 objects to a comment made by Plaintiff's counsel. (*Id.*) Entry 28 questions whether Gebow used the word "tells" or "shells" when responding to a question. (*Id.* at 5.) Entry 33 also takes issue with a comment from Plaintiff's counsel. (*Id.*) Rule 30(e) permits corrections "in form or substance." Entries 13 and 28 seek to correct the deposition transcript and are permitted by the rule. Entries 18 and 33 are Gebow's opinions concerning counsel's line of questioning; these constitute commentary rather than correction, and are not the type of "errata" contemplated by Rule 30(e).

[4] The numbers identified herein correspond with the entries contained in Dkt. No. 171-1, with the first entry being assigned the number "1."

Accordingly, the Court STRIKES the errata changes identified as entries 4–7, 9–11, 16–17, 19–20, 22–27, 30–32, and 34–40. The Court further STRIKES the commentary identified as entries 18 and 33.

## II. ORDER

As explained and identified in this Order:

1) Plaintiff's Motion for Sanctions and to Compel Discovery (Dkt. No. 130) is GRANTED in part and DENIED in part. Within 10 days of this Order, Plaintiff may file a motion for attorney fees incurred in bringing this motion.

2) Plaintiff's Motion to Compel Further Deposition Testimony (Dkt. No. 146) is DENIED.

3) Defendant's Motion for Disqualification (Dkt. No 150) is DENIED. Defendant's Motion to Seal (Dkt. No. 149) is GRANTED.

4) Defendant's Motion to Compel Production of NPI Calendars (Dkt. No. 165) is DENIED.

5) Plaintiff's Motion to Strike Deposition Errata (Dkt. No. 170) is GRANTED in part and DENIED in part.

Dated this 25th day of September, 2023.

David G. Estudillo
United States District Judge