UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NATIONAL PRODUCTS INC, | CASE NO. 2:20-cv-00428-DGE |
| Plaintiff, | ORDER ON MOTIONS TO STRIKE UNDISCLOSED THEORIES (DKT. NOS. 205, 206) |
| v. | |
| INNOVATIVE INTELLIGENT PRODUCTS LLC d/b/a GPS LOCKBOX, | |
| Defendant. | |

This matter comes before the Court on Plaintiff's motions to strike Defendant's undisclosed damages (Dkt. No. 205) and technical (Dkt. No. 206) theories. For the reasons explained below, Plaintiff's motion to strike Defendant's damages theories is GRANTED. Plaintiff's motion to strike Defendant's technical theories is GRANTED in part and DENIED in part.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The Court assumes familiarity with the factual and procedural background of this case. On December 22, 2023, Plaintiff filed a motion to strike three damages related theories that

Defendant failed to disclose during discovery.  (Dkt. No. 205.)  The same day, Plaintiff filed a motion to strike several opinions of Defendant's technical expert, Kimberly Cameron, Ph.D., arguing Dr. Cameron's positions are different from those disclosed in Defendant's infringement and invalidity contentions.  (Dkt. No. 206.)

## II.    DISCUSSION

### A.  Motion to Strike Undisclosed Damages Theories (Dkt. No. 205)

Plaintiff argues the Court should strike Defendant's previously undisclosed damages theories pursuant to Federal Civil Procedure Rule 37.  "When a party fails to disclose information required by Rule 26, Rule 37(c)(1) provides that the improperly withheld information should be excluded, unless the failure to disclose is 'substantially justified or harmless.'"  *Ingenco Holdings, LLC v. Ace Am. Ins. Co.*, 921 F.3d 803, 821 (9th Cir. 2019).  District courts have "particularly wide latitude" under Rule 37(c)(1) to exclude information not provided pursuant to Rule 26.  *Id.*

In its initial disclosures, filed on June 15, 2020, Defendant asserted it was not seeking damages.  (Dkt. No. 208-14 at 7.)  Plaintiff contends Defendant never updated these disclosures, and that despite a nearly three-year discovery period, Defendant failed to disclose certain damages-related theories and arguments that appeared for the first time in Defendant's expert reports.  (Dkt. No. 205 at 6.)  Plaintiff argues Defendant has presented no justification for this failure, and that such failure prevented Plaintiff from obtaining relevant discovery and prejudiced its ability to pursue its claims.  (*Id.* at 7.)  Defendant claims it did disclose these theories in

1    pleadings, interrogatory responses, depositions, and other discovery documents.[1]  (Dkt. No. 234

2    at 4.)

3                    1.   Claimed Antitrust Damages and *Daubert* Motion

4                         i.   Claimed Antitrust Damages

5           Plaintiff contends Defendant never updated its initial disclosures with respect to damages,

6    even after it asserted antitrust counterclaims in late 2020.  (Dkt. No. 205 at 13.)  Plaintiff argues

7    it first became aware Defendant was seeking damages for Plaintiff's alleged anticompetitive

8    conduct when it was served, after the close of fact discovery, with an antitrust damages report

9    prepared by Frank Bernatowicz.  (*Id.*)  Bernatowicz's report is dated September 15, 2023 and

10   alleges between $9.3 million and $20.1 million in damages caused by Plaintiff's anticompetitive

11   acts.  (Dkt. No. 208-7 at 36–38.)  Plaintiff argues Bernatowicz's analysis includes several

12   theories never disclosed during discovery, namely "out-of-pocket costs" (including attorneys'

13   fees), "lost profits," "diminution-in-value," and "pre-judgment interest."  (Dkt. No. 205 at 7.)

14          Defendant acknowledges it did not supplement its initial disclosures, but argues it did

15   give Plaintiff notice of its damages theories.  Defendant relies on Rule 26(e) which provides that

16   a party has no obligation to supplement its disclosures if the information in question was

17   "otherwise . . . made known" to the opposing party in writing or during the discovery process.

18   (Dkt. No. 234 at 5.)  Defendant cites its Amended Answer to Plaintiff's Second Amended

19   Complaint, which alleges damages stemming from several counterclaims related to monopolies

20   and unfair competition.  (*Id.* at 6–7.)  Defendant contends it provided additional information

21

22   _____

22   [1] Defendant argues Plaintiff never updated its initial disclosures, and asks for leave to file a
     motion to strike Plaintiff's defenses to Defendant's counterclaims.  (*Id.*)  However, Defendant
23   has not presented any argument that Plaintiff's initial disclosures were deficient and does not
     argue, as Plaintiff does, that the positions taken by Plaintiff's experts are different from those set
24   forth in Plaintiff's initial disclosures.

1    concerning its damages theories in response to Plaintiff's interrogatories.  (*Id.* at 7–8.)

2    Defendant further contends Bernatowicz relied on these pleadings and information when

3    rendering his opinion.  (*Id.* at 8.)

4            These pleadings and discovery responses indicate Defendant, at various points during the

5    discovery process, informed Plaintiff of its intention to seek damages and provided some

6    information concerning the theories underlying its alleged damages.  For example, in its answers

7    to one of Plaintiff's interrogatories, Defendant identified estimates for lost sales, costs associated

8    with diversifying its business, lost market share, and the estimated value Defendant could have

9    sold itself for to potential buyers.  (Dkt. No. 235-1 at 5–8.)

10           Despite providing estimated damages for Plaintiff's alleged behavior, Defendant did not

11   meet its disclosure obligations under Rule 26.  Under Rule 26, a party must provide in its initial

12   disclosures "a computation of each category of damages claimed by the disclosing party" and

13   make available the unprivileged documents or other evidentiary materials "on which each

14   computation is based, including materials bearing on the nature and extent of injuries suffered[.]"

15   Fed. R. Civ. P. 26(a)(1)(A)(iii).  A party who has made a disclosure under Rule 26(a) must

16   supplement or correct its disclosure in a timely manner if the party learns "that in some material

17   respect the disclosure or response is incomplete or incorrect, and if the additional or corrective

18   information has not otherwise been made known to the other parties during the discovery process

19   or in writing[.]"  Fed. R. Civ. P. 26(e)(1)(A).  It is not sufficient for a party to simply disclose

20   that it is seeking damages; a party must provide in its initial disclosures "a computation" of each

21   category of damages claimed by the disclosing party.  Fed. R. Civ. P. 26(a)(1)(A)(iii).  Nor is it

22   enough for a party to explain, in general terms, the theories underlying its damages claims.  *See*

23   *MKB Constructors v. Am. Zurich Ins*. Co., Case No. 13-cv-0611 JLR, 2014 WL 4848229, at *6

24

(W.D. Wash. Sept. 29, 2014) ("Simply providing documents or other information and assuming that the defendant will somehow divine the plaintiff's damages computation from those documents or other information is insufficient and not in accord with the requirements of Rule 26(a) and (e).").

Early disclosure serves an important purpose in the discovery process as it "assist[s] the parties in focusing and prioritizing their organization of discovery." *City & County of San Francisco v. Tutor–Saliba Corp*., 218 F.R.D. 219, 221 (N.D. Cal. 2003). Disclosure also prevents a party from shifting the burden of determining its alleged damages to the opposing party. *Jackson v. United Artists Theatre Circuit, Inc*., 278 F.R.D. 586, 593 (D. Nev. 2011). "The damages computation in particular further enables the defendant to understand the contours of its liability exposure and, by extension, to make informed decisions regarding settlement." *Silvagni v. Mal-Mart Stores, Inc*., 320 F.R.D. 237, 240 (D. Nev. 2017). "The level of specificity for the damages computation varies depending on the stage of the litigation and the claims at issue." *Id.* Nevertheless, parties must provide at least a "preliminary assessment" concerning damages at the outset of the case. *Id.* There is no bright line rule that disclosure of a damages computation is improper if made after the expert disclosure deadline or even after the close of discovery. *Id*. at 241. Instead, the key inquiry is "whether the timing of the supplemental disclosure is reasonable based on when the information was available to the plaintiff." *Id.*

Defendant submitted its initial disclosures on June 15, 2020, three months after Plaintiff filed its complaint. (Dkt. No. 208-14.) The initial disclosures unambiguously identified Defendant was "not currently seeking damages" and that disclosure of a computation of damages was "not applicable." (*Id*. at 7.) Defendant never amended its disclosure to provide a damages computation, despite its subsequent decision to seek damages. Instead, in response to discovery

1    requests, Defendant identified categories of damages and costs allegedly caused by Plaintiff's

2    actions. But missing from the discovery responses was any computation supporting the damages

3    Defendant allegedly was seeking. A computation of damages was not provided until late 2023,

4    well after the close of fact discovery and near the end of expert discovery.

5           Under the circumstances, the timing of Defendant's disclosure was not reasonable.

6    While Defendant may not have had a precise damages figure until it received its expert report,

7    the computation Defendant used to support its estimated damages could have been disclosed well

8    in advance of the close of fact discovery. A party "has a duty to diligently obtain the necessary

9    information and prepare and provide its damages computation within the discovery period."

10   *Jackson*, 278 F.R.D. at 593. "Rule 26(a)(1)(A)(iii) would be rendered meaningless if a party

11   could avoid its requirements by not obtaining the documents or information needed to prepare

12   the damages computation." *Id*. at 594.

13          "In the ordinary case, violations of Rule 26 may warrant evidence preclusion." *R & R

14   Sails, Inc. v. Ins. Co. of Pennsylvania,* 673 F.3d 1240, 1247 (9th Cir. 2012). However, evidence

15   preclusion can be a harsh sanction, and can, in certain cases, deal a fatal blow to a party's claim.

16   *Id.* When a sanction under Rule 37(c) amounts to dismissal of a claim, courts are "required to

17   consider whether the claimed noncompliance involved willfulness, fault, or bad faith." *R&R

18   Sails*, 673 F.3d at 1247. Here, Defendant has not provided any explanation for failing to

19   supplement its initial disclosures to include a preliminary damages computation after it presented

20   its counterclaims. Based on Defendant's prior conduct, the Court is compelled to conclude this

21   failure was willful and possibly in bad faith.

22          The Court has repeatedly cautioned Defendant about its litigation tactics and has

23   sanctioned Defendant for failure to meet its discovery obligations. More than two years ago,

24

ORDER ON MOTIONS TO STRIKE UNDISCLOSED THEORIES (DKT. NOS. 205, 206) - 6

1   when denying Defendant's motion for leave to amend its answer, the Court advised Defendant

2   that it would "look unfavorably upon future motions to amend . . . if they are based upon facts or

3   legal theories known to the parties long before the motion was filed." (Dkt. No. 88 at 10.)

4   Despite this admonition, the Court recently denied Defendant's motion to amend its answer,

5   which was based on facts of which Defendant was aware long before it filed the motion. (Dkt.

6   No. 248 at 2–6.) The Court also found there was a colorable argument that Defendant's delay in

7   filing the motion to amend was due to bad faith. (*Id.* at 6 n. 6.) Defendant's delay in providing

8   Plaintiff its damages computation is consistent with its previous conduct, which appears

9   designed to delay resolution of this case.

10        Precluding Defendant from presenting evidence of damages stemming from its antitrust

11   counterclaims will undermine those claims and otherwise bar them from proceeding. "Given the

12   likely dispositive nature of such a sanction" the Court must consider whether a lesser remedy is

13   available." *Ingenco Holdings, LLC v. Ace American Insurance Co.*, Case No. C13-543, 2016

14   WL 4703758, at *4 (W.D. Wash. Sept. 7, 2016).

15        Neither party offers a true alternative to striking the late disclosed damages. Presumably,

16   the Court could re-open discovery to permit Plaintiff to further explore the basis of Defendant's

17   damages computation. The Court also could construe Plaintiff's motion to strike as a motion to

18   compel amendment of Defendant's initial disclosures, which is sometimes done in the context of

19   deficient infringement contentions. *See e.g., Tech. Props. Ltd. LLC v. Samsung Elecs. Co.*, Ltd.,

20   114 F. Supp. 3d 842, 852 (N.D. Cal. 2015). Neither of these remedies is appropriate given the

21   stage of this litigation. And re-opening discovery or permitting Defendant to amend its initial

22   disclosures at this late stage would reward Defendant's dilatory tactics by further delaying

23   resolution of this case, which has been pending for more than four years.

24

1    Accordingly, the Court finds preclusion of Defendant's evidence regarding antitrust

2    damages is appropriate.

3         ii.   *Daubert* Motion

4    Alternatively, Plaintiff asks to preclude Bernatowicz's market share analysis and opinion,

5    which for all intents and purposes would likely have the same dispositive effect of excluding

6    Bernatowicz's damages opinions.  This is because to pursue an antitrust claim, a party must

7    establish, directly or indirectly, that the conduct at issue has a substantial anticompetitive effect.

8    *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 983 (9th Cir. 2023).  A direct claim normally

9    involves evidence of "actual detrimental effects on competition, such as reduced output,

10   increased prices, or decreased quality in the relevant market."  *Id*. (cleaned up).  An indirect

11   claim requires a party to "prove that the defendant has market power" and that the identified

12   restraints harm competition.  *Id*.  Market power normally is inferred from a party's "possession

13   of a high market share" and bars to market entry.  *Id*.  Defendant appears to assert an indirect

14   claim by seeking to establish Plaintiff's market share.

15   Plaintiff argues Bernatowicz's market share opinion is unreliable and should be excluded

16   pursuant to Evidence Rule 702.  Defendant counters that Bernatowicz's market share opinion is

17   based on Plaintiff's "own data" and based "on the best information" available.  (Dkt. No. 234 at

18   8–9.)

19   Expert witness opinions must be based on "sufficient facts or data" and the "product of

20   reliable principles and methods."  Fed. R. Evid. 702(b)–(c).  And even if Bernatowicz's relied in

21   part on Plaintiff's data, Bernatowicz unambiguously states, "These estimates are based on

22   incomplete and/or uncorroborated data."  (Dkt. No. 208-7 at 23.)  Bernatowicz's also testified,

23   "there's a lot of assumptions that need to be made" making "less than reliable output, based upon

24

1   the input that I had utilized." (Dkt. No. 208-9 at 5.) Presumably this is because "the input

2   information is not verifiable with respect to most of the companies here besides GPS and NPI.

3   So there's no way to tell exactly what the market share, in reality, might be." (*Id*. at 4.) As

4   stated by Bernatowicz's,

> . . . I don't believe [the publicly available information of other companies used in
> estimating market share] is reliable. That information is general information about
> the size of the company that has not been corroborated. It talks nothing about the
> specific products that compete with NPI or GPS. So no, I have not found a good
> source, as indicated in my report, for purposes of developing a market share.

8   (*Id*. at 3.)

9       Based on Bernatowicz's own confidence, or lack thereof, in his market share estimate, his

10  opinion is not based on sufficient facts or data nor the product of reliable principles or methods.

11  The Court, therefore, GRANTS Plaintiff's alternative motion to exclude Bernatowicz's market

12  share opinion.

13          2.   Reasonable Royalty Analysis

14              i.   Reasonable Royalty

15      Plaintiff's complaint seeks damages pursuant to 35 U.S.C. § 284, in the form of lost

16  profits or a reasonable royalty for Defendant's sale of products that infringe Plaintiff's patents.

17  (Dkt. No. 43 at 19.) During discovery, Plaintiff submitted an interrogatory asking Defendant to

18  explain how much Plaintiff would be entitled to recover in damages if Defendant was found

19  liable for infringing Plaintiff's patents. (Dkt. No. 208-19 at 10.) Defendant responded by

20  asserting that if it were found liable for infringement, a reasonable royalty rate in this case would

21  be "the same [rate] as imposed in the NPI v. High Gear Specialties, Inc., 6:18-CV-543-ORL-

22  37DCI [case]." (*Id*. at 11.) During a June 2023 deposition, Defendant's Rule 30(b)(6) witness

23

24

1  testified that Defendant's position concerning the royalty rate had not changed.  (Dkt. No. 208-
2  21 at 5–6.)

3      Plaintiff argues that when Bernatowicz submitted his rebuttal report concerning damages
4  several months later, he provided two previously undisclosed percentage royalty rates which
5  were different from the per unit rate imposed in the *High Gear* case.  (Dkt. No. 205 at 9.)

6      Plaintiff contends Bernatowicz's first proposed royalty rate is based on the settlement
7  agreement in *NPI v. Arkon*, a case Defendant did not identify as relevant during discovery.  (*Id.*
8  at 15.)  Plaintiff argues Bernatowicz's second proposed royalty rate is based on an apportioned
9  "incremental profit" theory that was never disclosed prior to his rebuttal report.  (*Id.*)  Plaintiff
10 asks the Court to strike Bernatowicz's previously undisclosed theories regarding reasonable
11 royalties because they are inconsistent with the positions Defendant took during discovery.  (*Id.*
12 at 15.)

13     Defendant contends Bernatowicz relied in part on the *High Gear* case when forming his
14 opinion concerning the appropriate royalty rate.  (Dkt. No. 234 at 9.)  Defendant further contends
15 Plaintiff had knowledge of the royalty rate set forth in Bernatowicz's opinion because the rate in
16 the *High Gear* case was based on the settlement agreement in the *Arkon* case.  (*Id.*)  Finally,
17 Defendant argues Bernatowicz's opinion concerning "incremental profits" factors into the
18 reasonable royalty analysis set forth in *Georgia-Pacific v. U.S. Plywood Corp.*, 318 F. Supp.
19 1116, 1120 (S.D.N.Y. 1970).  (*Id.* at 7.)

20     The Court finds Defendant's arguments unpersuasive.  Defendant appears to argue
21 Plaintiff was aware, or should have been aware, that Bernatowicz was going to calculate a
22 different royalty rate than that ultimately utilized in the *High Gear* case.  The Court cannot find
23 Defendant's decision to present different royalty calculations in the expert report was harmless.
24

1    Parties have a duty to supplement or amend damages contentions when a party's damages theory

2    shifts "in some material respect." *Looksmart Grp., Inc. v. Microsoft Corp*., 386 F. Supp. 3d

3    1222, 1227 (N.D. Cal. 2019) (citing Fed. R. Civ. P. 26(e)(1)(A)).  Defendant's new theories were

4    proffered at the end of the discovery period, preventing Plaintiff from conducting discovery on

5    Defendant's theories and calculations.  Permitting additional discovery at this stage would

6    further delay resolution of this case and would reward Defendant's dilatory tactics.

7        Nor can the Court find Defendant's late submission of new theories regarding royalty

8    calculations was substantially justified.  Defendant responded to Plaintiff's interrogatories in

9    May 2023 and confirmed its position concerning the appropriate royalty rate during a deposition

10   in June 2023.  Bernatowicz's rebuttal report is dated October 11, 2023 and it is unclear when

11   Defendant decided to instruct Bernatowicz to reformulate a royalty rate different than the royalty

12   rated utilized in *High Gear.*

13       Defendant's decision to repeatedly assert one position regarding the royalty, and then

14   change that position in an expert's rebuttal report without warning or explanation, appears to be

15   consistent with Defendant's prior tactics and prejudices Plaintiff's ability to pursue its claims.

16   *Amarin Pharma, Inc. v. W.-Ward Pharms. Int'l Ltd*., 407 F Supp. 3d 1103, 1116 (D. Nev. 2019)

17   ("[A]n expert's rebuttal testimony may not introduce new, alternative, or previously

18   unconsidered theories."); *see also ATD Corp. v. Lydall, Inc*., 159 F.3d 534, 550–551 (Fed. Cir.

19   1998) (One purpose of the Federal Rules is "to prevent unfair and prejudicial surprise[.]").

20       Accordingly, the Court finds it appropriate to strike Defendant's undisclosed reasonable

21   royalty theories.

22

23

24

1

ii.    Reliance on Arkon Agreement

2    Alternatively, Plaintiff asks the Court to preclude Bernatowicz from relying upon the

3    noncomparable NPI-Arkon license agreement to formulate a reasonable royalty.  (Dkt. No. 205

4    at 15–17.)  "To calculate the reasonable royalty, patentees generally consider a hypothetical

5    negotiation, in which the asserted patent claims are assumed valid, enforceable, and infringed."

6    *DataQuill Ltd. v. High–Tech Computer Corp*., 887 F.Supp.2d 999, 1020 (S.D. Cal. 2011).  The

7    parties then attempt "to ascertain the royalty upon which the parties would have agreed had they

8    successfully negotiated an agreement just before infringement began."  *Lucent Techs, Inc. v.*

9    *Gateway, Inc.,* 580 F.3d 1301, 1318, 1324, 1325 (Fed. Cir. 2009).

10    "In determining a reasonable royalty, parties frequently rely on comparable license

11    agreements."  *Bio-Rad Laboratories, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1372 (Fed. Cir.

12    2020).  However, the "licenses relied on by the patentee in proving damages [must be]

13    sufficiently comparable to the hypothetical license at issue in suit."  *Lucent,* 580 F.3d at 1325.  A

14    patentee cannot "rely on license agreements that are 'radically different from the hypothetical

15    agreement under consideration' to determine a reasonable royalty."  *Uniloc USA, Inc. v.*

16    *Microsoft Corp.,* 632 F.3d 1292, 1316 (Fed. Cir. 2011) (quoting *Lucent,* 580 F.3d at 1327).

17    "Assessing the comparability of licenses requires a consideration of whether the license at issue

18    involves *comparable* technology, is economically comparable, and arises under comparable

19    circumstances as the hypothetical negotiation."  *Bio-Rad*, 967 F.3d at 1372–1373 (emphasis

20    added).

21    Plaintiff argues Defendant's technical expert provides no analysis of technological

22    comparability, and that Plaintiff's own expert opined that technologies at issue in the Arkon case

23    are dissimilar and not comparable to those at issue here.  (Dkt. No. 205 at 16.)  Plaintiff reasons

24

ORDER ON MOTIONS TO STRIKE UNDISCLOSED THEORIES (DKT. NOS. 205, 206) - 12

that to the extent Bernatowicz's opinion concerning the comparability of the two licenses rests

on his assumption that the two technologies are similar, his opinion should be excluded based on

an application of Federal Circuit precedent, which requires a party to establish comparability of

patent licenses before relying on those licenses for purposes of a reasonable royalty analysis.

(*Id.*)

Defendant did not respond to Plaintiff's argument concerning technological

comparability.  Accordingly, the Court finds this to be an alternative basis to preclude

Defendant's reliance on the NPI-Arkon license agreement.  *See Wordtech Sys. v. Integrated

Networks Solutions, Inc.*, 609 F.3d 1308, 1320 (Fed. Cir. 2010) (when calculating a reasonable

royalty, "comparisons of past patent licenses to the infringement must account for the

technological and economic differences between them.") (internal citation and quotation marks

omitted).

### 3.   Reliance on Previously Undisclosed Non-Infringing Alternatives

In response to an interrogatory concerning non-infringing alternatives ("NIAs"),

Defendant asserted its Ultrapro 7, Mega and S3/S4 products were acceptable NIAs.  (Dkt. No.

208-20 at 5.)  Defendant also cited several websites featuring "perhaps more than 100" mobile

phone and/or tablet holder systems which were also NIAs.  (*Id.* at 5–6.)  During a Rule 30(b)(6)

deposition, Defendant confirmed its position regarding NIAs.  (Dkt. No. 208-21 at 10–11.)

Plaintiff argues that despite Defendant's representations, Dr. Cameron's expert report

asserts that several never before disclosed products or references are NIAs, "including modified

versions of the Accused Products and the inventions disclosed in the Braitberg, Kogan, and

Rudisill prior art references."  (Dkt. Nos. 205 at 11; 208-4 at 33–44.)  Plaintiff argues

Bernatowicz similarly asserted that "even more vaguely identified products were NIAs,

including unspecified products made by NPI, GPS, Pro[]Clip/B[r]odit, Arkon, Havis, Gamber-Johnson, Panavise, Scotty, Jotto, Quadrock, Wizgear, Otterbox, and other undisclosed OEM's." (Dkt. Nos. 205 at 11; 208-8 at 26) (internal quotations omitted).

Plaintiff argues Defendant should not be able to rely on acceptable NIAs identified for the first time Defendant's expert rebuttal report.  (Dkt. No. 205 at 17.)  Defendant argues it previously disclosed several of the NIAs in question as prior art, in support of an inter partes review petition filed in March 2020.  (Dkt. No. 234 at 11.)

"Failure to timely disclose properly requested information relating to non-infringing alternatives, may serve as grounds to exclude testimony at trial relating to the topic."  *Realtime Data LLC v. EchoStar Corp*., Case No. 17-CV-00084-JDL, 2018 WL 6266300, at *6 (E.D. Tex. Nov. 15, 2018).  Defendant's disclosure of certain products as prior art is not equivalent to arguing those products are NIAs.  "A disclosure that a design exists is not a disclosure that [defendant] is contending that it constitutes a readily available, acceptable non-infringing alternative."  *Pelican Int'l. Inc. v. Hobie Cat Co.*, Case No. 20-cv-02390-RSH-MSB, 2023 WL 2127995, at *14 (S.D. Cal. Feb. 10, 2023); *see also Realtime Data*, 2018 WL 6266300, at *7 ("Defendants' attempts to cite to tangential references in the record referencing [alleged NIAs] comes off largely as a hindsight attempt to 'find' disclosure, rather than evidence of Defendants' compliance with disclosure requirements.").

Defendant has offered no justification for failing to disclose these NIAs, and the failure to disclose them is not harmless.  *ICM Controls Corp. v. Honeywell Int'l Inc.*, Case No. 12-CV-1766 (LEK/ATB), 2021 WL 3403734, at *4 (N.D.N.Y. Aug. 4, 2021) ("Honeywell's failure to disclose these alternatives prejudices ICM.  Due to Honeywell's late disclosure, ICM will not

1  have the opportunity to depose fact witnesses about these hypothetical alternatives and will be

2  unable to explore their feasibility, functionality, acceptability, and potential cost.").

3        Accordingly, the Court strikes any reference to Defendant's previously undisclosed

4  NIAs.

5  **B. Motion to Strike Undisclosed Technical Theories (Dkt. No. 206)**

6        Plaintiff asks the Court to strike the opinions of Defendant's technical expert, Dr.

7  Cameron, because Defendant did not disclose her opinions in in its noninfringement and

8  invalidity contentions.  (Dkt. No. 206 at 4.)  Plaintiff argues it construed the claims language

9  based on the positions asserted in Defendant's contentions, which Defendant re-stated and never

10 amended, and is now confronted with new theories it was unable to explore during discovery.

11 (*Id.* at 5.)  Plaintiff asks the Court to strike Dr. Cameron's theories as a violation of the Local

12 Patent Rules.  (*Id.*)  Defendant argues its contentions were "preliminary" and so the parties need

13 not "continuously file motions to leave for every little nuance about how contentions are

14 implemented over the course of a case."  (Dkt. No. 236 at 6.)  Defendant contends Dr.

15 Cameron's positions "are within and/or supported" by Defendant's preliminary non-infringement

16 and invalidity contentions ("PNICs") and should therefore not be stricken.  (*Id.*)

17       The Local Patent Rules[2] require "both the plaintiff and the defendant in patent cases to

18 provide early notice of their infringement and invalidity contentions, and to proceed with

19 diligence in amending those contentions when new information comes to light in the course of

20

21 [2] Plaintiff's motion cites the Northern District of California's Local Patent Rules, which "serve as
22 the model for this District."  *Treehouse Avatar LLC v. Valve Corp.*, Case No. 17-CV-1860-RAJ,
   2019 WL 917403, at *2 n.1 (W.D. Wash. Feb. 25, 2019).  "Courts in the Western District of
23 Washington look to Northern District of California decisions for guidance due to the similarity
   between the districts' patent rules."  *Corus Realty Holdings, Inc. v. Zillow Grp., Inc.*, Case No.
24 18-CV 0847JLR, 2020 WL 488545, at *6 n.6 (W.D. Wash. Jan. 30, 2020).

discovery." *O2 Micro Int'l, Ltd. v. Monolithic Power Sys.*, 467 F.3d 1355, 1366–1367 (Fed. Cir. 2006).  The rules are designed "to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed."  *Atmel Corp. v. Information Storage Devices, Inc*., Case No. C95–1987FMS, 1998 WL 775115 at *2 (N.D. Cal. Nov. 5, 1998).  Otherwise, infringement cases risk falling prey to "a vexatious shuffling of positions—a kind of legal musical chairs serving no purpose other than to entertain highly paid lawyers and to thwart the very intention behind the patent local rules."  *Id.*

### 1.  Infringement Contentions

Plaintiff contends Dr. Cameron's expert report introduces new infringement positions with respect to several claim terms, specifically: (a) base receiver, (b) female connector, (c) rim, (d) detachable adapter, (e) back support surface and docking support surface, (f) a docking or female connector disposed within a docking support surface, and (g) rim to guide proper mating. (Dkt. No. 206 at 12–14.)  Defendant presents several arguments in response, but primarily asserts that Dr. Cameron's positions "are not significantly different" from the PNICs and are therefore acceptable.  (Dkt. No. 236 at 7–10.)

### a.  Base Receiver

In its noninfringement contentions, Defendant asserted a base receiver was "a lower lip extending upward from the tray of the cradle that envelopes (sic) the lower edge and lower side portions of the cover holding the electronic device."  (Dkt. No. 208-15 at 8.)  Defendant argued the Accused Products do not infringe Plaintiff's patents because they "do[] not have any such a (sic) lower lip . . . but instead ha[ve] two prongs that hold the bottom of the case."  (*Id.* at 9.)

1      In her expert report, Dr. Cameron contends Defendant's products do not infringe because

2  "[i]n the accused products, it is the case that receives claws of the cradle, not the *base* of the

3  cradle that receives the case as in the asserted claims."  (Dkt. No. 208-4 at 55.)

4      Plaintiff argues Dr. Cameron's infringement contention advances an alternate theory

5  because it is not premised on the lack of a "lower lip" in the Accused Products.  (Dkt. No. 242 at

6  2.)  Defendant contends the only difference between its initial contention regarding the term

7  "base receiver" and Dr. Cameron's new position is the use of the term "claws" rather than

8  "prongs".  (Dkt. No. 236 at 7.)

9      The Court finds Dr. Cameron's position regarding the term "base receiver" is new and

10  different from Defendant's preliminary contentions.  Defendant submitted its preliminary

11  infringement and invalidity contentions on July 22, 2021.  (Dkt. No. 208-15 at 130.)  The Court

12  issued its order regarding claims construction on January 23, 2023.  (Dkt. No. 124.)  The Court's

13  construction of this term was different from Defendant's proposed construction, and Dr.

14  Cameron took this into account when formulating her opinion.  (Dkt. No. 208-4 at 55.)  The

15  Court's construction does not include any reference to a "lower lip" and instead construed the

16  term "base receiver" as "a portion of a docking cradle adapted to receive the electronic device

17  cover."  (Dkt. No. 124 at 17.)

18      To the extent the Court's claim construction order altered Defendant's position regarding

19  infringement, Defendant could have amended its contentions.  Local Rule 124 permits parties to

20  amend their infringement and invalidity contentions "by order of the Court upon a timely

21  showing of good cause."  The rule provides that a claim construction by the Court "different

22  from that proposed by the party seeking amendment" can support a finding of good cause.

23  Despite the difference between the Court's construction of "base receiver" and the construction

24

proposed by Defendant, Defendant did not move to amend its infringement contentions

following the Court's claim construction order, but instead chose to disclose its new position in

Dr. Cameron's expert report.  *See ASUS Comp. Int'l v. Round Rock Research, LLC*, Case No.

12–CV–02099–JST (NC), 2014 WL 1463609, at *1 (N.D. Cal. Apr. 11, 2014) ("A party may not

use an expert report to introduce new infringement theories, new infringing instrumentalities,

new invalidity theories, or new prior art references not disclosed in the parties' infringement

contentions or invalidity contentions.").

"The [local patent] rules . . . seek to balance the right to develop new information in

discovery with the need for certainty as to the legal theories."  *O2 Micro*, 467 F.3d at 1367.  The

rules regarding notice of infringement and invalidity contentions are not necessarily a

"straitjacket into which litigants are locked from the moment their contentions are served" and

there is a "modest degree of flexibility" at least near the outset of the case.  *Slot Speaker Techs.,*

*Inc. v. Apple, Inc.*, Case No. 13-CV-01161-HSG(DMR), 2017 WL 235049, at *2 (N.D. Cal. Jan.

19, 2017) (internal quotation omitted).

The Court finds no reason for flexibility here, particularly when Defendant had the

opportunity to amend its contentions and chose not to do so.  Moreover, during discovery

Defendant repeatedly referred Plaintiff to its original infringement and invalidity contentions and

asserted that Plaintiff could rely on them.  (Dkt. Nos. 208-19 at 3, 4–5, 6–7, 13–14; 208-21 at 3–

4.)  Defendant's decision to disclose its new position late in the discovery process appears

consistent with its dilatory tactics, creates needless uncertainty as to its legal theories, and

represents precisely the "vexatious shuffling of positions" the Local Patent Rules are designed to

avoid.

b.  *Female Connector*

In its noninfringement contentions, Defendant asserted the Accused Products did not have a "female connector" because the connectors used in the products are "non-insertion connectors" and are therefore not encompassed by the term "female connector." (Dkt. No. 208-15 at 16.)

The Court determined the term "female connector" was consistent with its plain and ordinary meaning, but to assist the trier of fact, the Court construed the term as "an inwardly recessed connector for mating with a complementary shaped protruding connector." (Dkt. No. 124 at 17.) Dr. Cameron argues that under the Court's construction, one of the Accused Products does not feature a male and female connector because "[t]here is no receptacle or recess on the charging cord, rather the charging cord is simply held in place by magnets" which is in contrast to "a lightning connector that is received into a recess or receptacle in an iPhone where the receptacle is female and the lightning connector is male." (Dkt. No. 208-4 at 62.)

Plaintiff argues Dr. Cameron has presented two new, untimely theories of infringement: (1) that the connectors must "hold" each other, and (2) that the connector on the accused docking cradle lacks a recess. (Dkt. No. 206 at 13.) Plaintiff contends the second theory also contradicts Defendant's contentions, which assert the connector in its docking cradle has a "recess." (Dkt. Nos. 206 at 13; 208-15 at 34.) Defendant does not directly address Plaintiff's arguments, but again argues Dr. Cameron's positions are not significantly different its preliminary contentions. (Dkt. No. 236 at 8.)

The Court agrees with Plaintiff and finds Dr. Cameron has presented new theories of noninfringement which differ from those asserted in its preliminary contentions with respect to this term.

1

       *c.   Rim*

2

     In its infringement contentions, Defendant asserted the magnetic connector in the

3

Accused Products lacked any rim.  (Dkt. No. 208-15 at 18.)  The Court determined the term

4

"rim" was consistent with its plain and ordinary meaning.  (Dkt. No. 124 at 17.)  Dr. Cameron

5

opined that a "rim, particularly in the context of the asserted patents . . . is not simply the edge of

6

a surface even if there are a pair of contacting surfaces."  (Dkt. No. 208-4 at 65.)  Dr. Cameron

7

opined that certain features identified by Plaintiff's expert as rims could not be rims because

8

"every edge of any contacting surface would then be a rim."  (*Id.*)

9

     Dr. Cameron's opinion that certain features in the Accused Products could not be rims is

10

broadly consistent with Defendant's initial contention that the Products lacked any rims, and

11

Defendant did not need to amend its contentions with respect to this term.

12

       *d.   Detachable Adapter*

13

     In its infringement contentions, Defendant asserted the adapter "is not detachable in the

14

ordinary course of business."  (Dkt. No. 208-15 at 67.)  Dr. Cameron opined the adapter is

15

"encased in essentially unremovable plastic held by hex screws, which would not be available

16

for the ordinary person."  (Dkt. No. 208-4 at 70.)  The terms "not detachable" and

17

"unremovable" express the same basic idea concerning the adapter, and Dr. Cameron's position

18

is consistent with Defendant's preliminary contentions.

19

      *e.   Back Support Surface and Docking Support Surface*

20

     Plaintiff argues Dr. Cameron provided an argument regarding "back support surface" and

21

"docking support surface" even though Defendant did not submit infringement contentions

22

regarding these terms.  (Dkt. No. 206 at 14.)  The Court determined the term "back support

23

surface" and "docking support surface" were consistent with their plain and ordinary meanings.

24

1   (Dkt. No. 124 at 17.)  Dr. Cameron opined that based on the Court's construction, the Accused

2   Products do not have a back support surface because the surface pointed to by Plaintiff "does not

3   support or even touch the electronic device and case." (Dkt. No. 208-4 at 57.)  Dr. Cameron

4   further opined that since the accused devices do not have a "back support surface," there cannot

5   be a "docking support surface extending away from the back support surface." (*Id.* at 59.)

6        Defendant argues Dr. Cameron's opinion is consistent with its preliminary infringement

7   contentions, which state the Accused Products do not infringe Plaintiff's patents because they

8   lack a back support surface and a docking support surface. (Dkt. Nos. 208-15 at 29; 236 at 7.)

9        Plaintiff contends Defendant never alleged noninfringement of any *asserted* claim based

10  on the lack of a back support surface or docking support surface, but rather made conclusory

11  assertion that such elements were lacking with respect to *unasserted* claims. (Dkt. No. 242 at 7.)

12       Plaintiff's argument is based on Local Patent Rule 121(a), which requires infringement

13  contentions to include, for "each Asserted Claim against that party" a chart stating whether the

14  party admits that that element "is present in the Accused Device or contends that it is absent

15  from the Accused Device." If the party contends that an element is absent from the Accused

16  Device, it must "set forth in detail the basis for that contention."

17       In this context, the Court finds there is no meaningful distinction between "asserted" and

18  "unasserted" claims. Rather, the question is where Plaintiff had notice of Defendant's position

19  regarding infringement and whether Dr. Cameron's opinion altered that position in way that

20  prejudiced Plaintiff's ability to pursue its claims. Plaintiff had notice of Defendant's position,

21  and Dr. Cameron's opinion does not change that position in a manner prejudicial to Plaintiff.

22

23

24

1

2

### f.   A Docking or Female Connector Disposed Within a Docking Support Surface

3

4

Plaintiff argues Dr. Cameron found this element was not present, even though Defendant's contentions do not contain any argument that the Accused Products lack a connector disposed within a docking support surface.  (Dkt. No. 242 at 7.)  Dr. Cameron opined the surface highlighted by Plaintiff's expert "does not have a female connector disposed within it" and that Plaintiff and Plaintiff's expert "do not even point to any portion of what they have labeled the docking support surface as contacting or being a part of the what [sic] they point to as the female connector."  (Dkt. No. 208-4 at 60.)

5

6

7

8

9

10

Defendant argues it addressed this element in its preliminary contentions.  (Dkt. No. 236 at 8.)  In its contentions, Defendant asserted the connectors used in the Accused Products were "non-insertion connectors" and are therefore not encompassed by the term "female connector." (Dkt. Nos. 208-15 at 16.)  Defendant references the same language cited in connection with its argument regarding the term "female connector", but does not cite anything in its contentions addressing whether the Accused Products lack a connector "disposed within a docking support surface."

11

12

13

14

15

16

The Court therefore agrees with Plaintiff that this is a contention not previously asserted and will not be allowed.

17

18

### g.   Rim to Guide Proper Mating

19

20

Plaintiff contends Defendant's contentions do not assert any noninfringement argument based on the lack of a "rim to guide proper mating."  (Dkt. No. 242 at 7.)  In its contentions, Defendant asserted the Accused Products did not have female connectors and that such a non-existent element could therefore not define a rim nor a "a rim to guide proper mating of the male connector of the removable cover to the female connector of the docking cradle."  (Dkt. No. 208-

21

22

23

24

ORDER ON MOTIONS TO STRIKE UNDISCLOSED THEORIES (DKT. NOS. 205, 206) - 22

1    15 at 16.)  Accordingly, Defendant's contentions do assert a noninfringement argument

2    concerning this element, and there is nothing improper about Dr. Cameron's opinion on this

3    point.

4              2.   Invalidity Contentions

5                   a.   *Invalidity Based on the Mega Product*

6              Plaintiff argues Defendant's invalidity contentions do not mention the Mega product or

7    argue that it invalidates any asserted claims.  (Dkt. No. 206 at 15.)  Dr. Cameron opined that all

8    asserted claims in the Patents-in-Suit are anticipated by Defendant's products, including the

9    Mega products.  (Dkt. No. 208-2 at 39–41.)  Dr. Cameron further opined that it would have been

10   obvious to modify its products, including its Mega products, to include elements not included in

11   Defendant's products.  (*Id.* at 41–42.)  In support of its argument, Plaintiff cites the Local Patent

12   Rules, which require a party to provide, for "[e]ach item of prior art that allegedly anticipates

13   each Asserted Claim or renders it obvious," "[a] chart identifying where specifically in each

14   alleged item of prior art each element of each Asserted Claim is found."  Local Patent Rules

15   121(b) & (d).  Plaintiff argues Defendant failed to provide a chart identifying the Mega against

16   any of the Asserted Claims.  (Dkt. No. 242 at 8.)

17             Defendant argues it did disclose its invalidity contentions with respect to the Mega

18   products.  Defendant cites its preliminary invalidity contentions, in which it argues Plaintiff's

19   patents are invalid because of prior sales, public use, or availability to the public of Defendant's

20   products "including but not limited to Ultra Pro 7, Tab E, Flex Products".  (Dkt. No. 237-1 at

21   138–140.)  Defendant also argues the Mega product is "very similar other than being bigger

22   compared to the S3/S4" and therefore "can be applied to the Patents-in-Suit without requiring

23   new theories."  (Dkt. No. 236 at 11.)

24

1   The Court finds unpersuasive Defendant's conclusory argument that its failure to disclose

2   an invalidity contention with respect to the Mega product is harmless because it is allegedly

3   similar to other products.  "Any invalidity theories not disclosed pursuant to Local Rule 3–3[3] are

4   barred, accordingly, from presentation at trial (whether through expert opinion testimony or

5   otherwise)."  *MediaTek Inc. v. Freescale Semiconductor, Inc*., Case No. 11–CV–5341–YGR,

6   2014 WL 690161, at *1 (N.D. Cal. Feb. 21, 2014).  Defendant does not dispute that it failed to

7   comply with the requirements of the Local Patent Rules.  Defendant's contentions do not

8   specifically mention the Mega product and Plaintiff should not have had to guess which products

9   Defendant was referring to.  Accordingly, the Court finds it appropriate to strike Dr. Cameron's

10  invalidity theory regarding Mega products.

### b.   *Invalidity of the Asserted Claims of the '309 Patent Based on the S3/S4 Product*

12  Plaintiff contends Defendant's invalidity contentions do not argue the S3/S4 products

13  invalidate any asserted claims.  (Dkt. No. 206 at 15.)  Dr. Cameron opined that all asserted

14  claims in the Patents-in-Suit are anticipated by the S3/S4 products.  (Dkt. No. 208-2 at 39–41.)

15  Dr. Cameron further opined that it would have been obvious to modify the S3/S4 product to

16  include elements not included in Defendant's products.  (*Id.* at 41–42.)  Defendant's arguments

17  are identical to those presented with respect to the Mega products, and the Court finds them

18  unpersuasive for the reasons discussed above.

### c.   *That it would be obvious to modify the S3/S415 to include a male connector*

---

[3] This is a Northern District of California Local Patent Rule equivalent to the Western District of Washington's Local Patent Rule 121(d).

1    Plaintiff argues Dr. Cameron's reports are the first time that Defendant asserted it would

2    be obvious to modify its S3/S4 product to include a male connector on the cover.  (Dkt. No. 206

3    at 15.)  Defendant does not dispute that this is the first time Defendant presented this argument,

4    but asserts Dr. Cameron's opinion was offered out of an "abundance of caution" should Plaintiff

5    assert that "in an invalidity context, the products do not have such structure than it would be

6    obvious to (sic)."  (Dkt. No. 236 at 11.)  Defendant's argument is difficult to understand and

7    appears to be incomplete.  Accordingly, the Court will strike this portion of Dr. Cameron's

8    opinion.

9         *d.  Lack of Written Description Support for Back Support Surface and
               Docking Support Surface*

10   Plaintiff argues Defendant's contentions listed several terms Defendant believed lacked

11   written description support, but abandoned those contentions when Dr. Cameron asserted that

12   "back support surface", "docking support surface" and "base receiver" lack written description

13   support.  (Dkt. No. 206 at 15.)  Plaintiff further argues Dr. Cameron makes the same new

14   arguments for lack of priority support with respect to "back support surface" and "docking

15   support surface".  (*Id.*)

16        Defendant contends the Local Patent Rules do not require disclosure of terms lacking

17   written description or priority defenses.  (Dkt. No. 236 at 8.)  Plaintiff argues that even if these

18   disclosures are not technically required by the local rules, they should nevertheless be stricken as

19   untimely.  (Dkt. No. 242 at 10.)  In the absence of a rules violation, the Court is disinclined to

20   strike this portion of Dr. Cameron's opinion.

21

22

23

24

1

### III.   ORDER

2   Plaintiff's motion to strike Defendant's damages theories (Dkt. No. 205) is GRANTED.

3   Plaintiff's motion to strike Defendant's technical theories (Dkt. No. 206) is GRANTED in part

4   and DENIED in part.  Accordingly, and as explained in this Order, the Court hereby ORDERS:

5   1)  Plaintiff's motion to strike Frank Bernatowicz's opinion regarding antitrust

6       damages is GRANTED.  As an alternative, the Court further determines that

7       Bernatowicz's antitrust market share analysis and calculation is unreliable and

8       GRANTS Plaintiff's *Daubert* motion to preclude Bernatowicz from testifying

9       about market share.

10  2)  Plaintiff's motion to strike Defendant's previously undisclosed reasonable royalty

11      theories is GRANTED.  As an alternative, the Court further determines that

12      Defendant has failed to meet its burden to show that the NPI-Arkon license

13      agreement concerns comparable technology and GRANTS Plaintiff's motion to

14      preclude Defendant from relying on the technologically noncomparable license.

15  3)  Plaintiff's motion to strike Defendant's previously undisclosed alleged

16      acceptable, non-infringing alternatives is GRANTED.

17  4)  Plaintiff's motion to strike Defendant's untimely noninfringement theories is

18      GRANTED in part.

19  5)  Plaintiff's motion to strike Defendant's untimely invalidity theories is also

20      GRANTED in part.

21

22

23

24

Dated this 30th day of July, 2024.

David G. Estudillo
United States District Judge