1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NATIONAL PRODUCTS INC,

                          Plaintiff,

          v.

INNOVATIVE INTELLIGENT
PRODUCTS LLC d/b/a GPS LOCKBOX,

                          Defendant.

CASE NO. 2:20-cv-00428-DGE

ORDER ON CROSS MOTIONS
FOR SUMMARY JUDGMENT
(DKT. NOS. 207, 249)

This matter comes before the Court on cross motions for summary judgment filed by

Plaintiff National Products Inc. ("NPI") and Defendant GPS Lockbox ("GPS").  For the reasons

explained below, Plaintiff's motion for summary judgment (Dkt. No. 207) is GRANTED in part

and DENIED in part.  Defendant's motion for partial summary judgment (Dkt. No. 249) is

DENIED.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The Court assumes familiarity with the factual and procedural background of this case. On December 22, 2023, Plaintiff filed a motion for summary judgment.  (Dkt. No. 207.) Plaintiff asks the Court to find Defendant infringed claim 11 of the '026 patent and claims 10, and 14–16 of the '334 patent.  (*Id.* at 7–16.)  Plaintiff also asks the Court to find Defendant engaged in indirect infringement.  (*Id.* at 16–17.)  Finally, Plaintiff contends that findings of 1) no invalidity, 2) no inequitable conduct, and 3) no antitrust violation are warranted.  (*Id.* at 17–36.)

On December 22, 2023, Defendant filed two motions for summary judgment.  (Dkt. Nos. 211, 215.)  On May 23, 2024, the Court issued an order striking these motions for failure to comply with the local rules, and directed Defendant to file a new dispositive motion no later than June 3, 2024.  (Dkt. No. 248.)  On June 3, 2024, Defendant filed a new motion for partial summary judgment.  (Dkt. No. 249.)  Defendant argues the Court should find all the Patents-in-Suit are unenforceable due to inequitable conduct—specifically, Plaintiff's alleged submission of false inventor oaths.  (*Id.* at 5–18.)  Defendant also asks the Court to find that certain claim terms are not entitled to the February 24, 2014, priority date of the predecessor '936 application.  (*Id.* at 18–28.)

## II.   LEGAL STANDARD

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is material if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute of material fact is genuine if there is

1    sufficient evidence on the record for a reasonable trier of fact to return a verdict for the

2    nonmoving party.  *Id*.  The party moving for summary judgement bears the initial burden of

3    identifying the portions of the pleadings, discovery, and affidavits that show the absence of a

4    genuine dispute of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  The

5    moving party may meet this burden by showing the non-moving party has failed to provide

6    evidence in support of their case.  *Id*. at 325; *see also Fairbank v. Wunderman Cato Johnson*,

7    212 F.3d 528, 531 (9th Cir. 2000).

8          If the moving party meets its initial burden, the nonmoving party must point to specific

9    evidence in the record showing that there is a genuine issue for trial.  *Anderson*, 477 U.S. at 250;

10   *T.W. Elec. Service Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)

11   ("[T]he nonmoving party may not rely on the mere allegations in the pleadings in order to

12   preclude summary judgement.").  If the nonmoving party fails to put forth such evidence, then

13   the moving party is entitled to judgement as a matter of law.  *Celotex*, 477 U.S. at 323.  In

14   determining whether a genuine dispute of material fact exists, "[t]he deciding court must view

15   the evidence, including all reasonable inferences, in favor of the non-moving party."  *Reed v.*

16   *Lieurance*, 863 F.3d 1196, 1204 (9th Cir. 2017).  Disputed facts "that might affect the outcome

17   of the suit under the governing law will properly preclude the entry of summary judgment," but

18   irrelevant or inconsequential disputes will not preclude summary judgment.  *Anderson*, 477 U.S.

19   at 248.

20                            **III.    DISCUSSION**

21   **A.  Plaintiff's Motion for Summary Judgment (Dkt. No. 207)**

22          1.  <u>Infringement</u>

23

24

Plaintiff argues that if the Court grants its motion to strike the untimely infringement theories of Defendant's technical expert, Dr. Kimberly Cameron, there is no dispute that claim limitations are present in the Accused Products.  (Dkt. No. 207 at 7.)  Plaintiff argues that its technical expert, James Babcock, opined that each limitation of every Asserted Claim is present in the Accused Products.  (*Id.*)  Plaintiff argues that if Dr. Cameron's noninfringement theories are stricken, Babcock's opinion will be undisputed and summary judgment of infringement would be appropriate.  (*Id.*)  Defendant argues that even if the Court strikes Dr. Cameron's noninfringement theories, there still remains a factual dispute between the parties concerning infringement.  Defendant contends noninfringement "has also been shown by GPS and NPI fact witnesses, such as for example, Mr. Dovey and Mr. Carnevali."  (Dkt. No. 239 at 4 n.2.)

The Court has stricken Dr. Cameron's noninfringement theories with respect to several of the claim terms at issue because they were not disclosed in Defendant's noninfringement and invalidity contentions, specifically: (a) base receiver, (b) female connector, and (c) docking or female connector disposed within a docking support surface.  (Dkt. No. 254 at 16–22.)  To the extent Dr. Cameron's reports assert noninfringement theories not previously disclosed, Defendant may not rely upon these theories to oppose Plaintiff's motion for summary judgment.

Further, if the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact, the nonmoving party "may not rely on the mere allegations in the pleadings in order to preclude summary judgment."  *TW Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  "Instead, it must produce at least some "significant probative evidence tending to support the complaint."  *Id.*  A "party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for

summary judgment," because "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal citation omitted).

In his expert reports, Babcock opined that the Accused Products practice all the Asserted Claims. (Dkt. Nos. 208-11 at 143–338; 208-13 at 18–51.) Defendant's conclusory assertion concerning certain unidentified statements by Dovey and Carnevali is not sufficient to create a genuine dispute of material fact regarding infringement. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to "particular parts of materials in the record, [such as] depositions, documents, electronically stored information, affidavits or declarations, stipulations [], admissions, interrogatory answers, or other materials." Fed. R. Civ. P 56(c)(1)(A). Defendant has not provided any citations to the record to support its assertion, and "[i]t is not the court's job to sift through the record in order to determine whether a party's conclusory argument has factual support." *Rogozinski v. Hartford Life and Acc. Ins. Co.*, Case No. 04 C 6947, 2007 WL 2409810, at *7 (N.D. Ill. Aug. 21, 2007); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in [the record].").

Accordingly, the Court finds that to the extent Defendant's position regarding noninfringement rests upon theories stricken from Dr. Cameron's report, Defendant may not rely upon these theories to oppose Plaintiff's motion for summary judgment. To the extent Defendant's position relies upon unspecified testimony from Dovey and Carnevali, this is not sufficient to raise a genuine issue of material fact regarding noninfringement.

a.   Claim 11 of the '026 Patent

i.   *Base Receiver*

1    "A determination of infringement generally requires a two-step analysis—the court first

2    determines the scope and meaning of the claims asserted, and then the properly construed claims

3    are compared to the allegedly infringing device (for an apparatus claim) or allegedly infringing

4    act (for a method claim)."  *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1350

5    (Fed. Cir. 2022).  "An infringement issue is properly decided upon summary judgment when no

6    reasonable jury could find every limitation recited in the properly construed claim is or is not

7    found in the accused device either literally or under the doctrine of equivalents."  *Gart v.*

8    *Logitech, Inc.*, 254 F.3d 1334, 1339 (Fed. Cir. 2001).

9    The term "base receiver" appears in claims 1, 8, and 10 of the '026 patent and claims 1,

10   5, and 8 of the '309 patent.  In its order regarding claim construction, the Court construed the

11   term as "a portion of a docking cradle adapted to receive the electronic device cover."  (Dkt. No.

12   124 at 17.)

13   Plaintiff contends there is no dispute that the Accused Product is comprised of a docking

14   cradle and an electronic device cover.  (Dkt. No. 207 at 8.)  Plaintiff contends the only question

15   remaining is whether a portion of the accused docking cradle receives the protective cover.  (*Id.*)

16   Plaintiff argues Defendant's own documents, which describe the purpose of its docking cradle as

17   "[l]ock[ing] in [the] [t]ablet for a [s]ecure and [t]ight [f]it," leave no doubt that the accused

18   cradle has a base receiver.  (*Id.*)  Plaintiff argues the presence of hooks in the docking cradle that

19   help hold the protective cover does not mean that the docking cradle lacks "a portion . . . adapted

20   to receive the electronic device cover."  (*Id.* at 9.)

21   Defendant argues Babcock "cannot attest without factual dispute that these elements are

22   met or not, because he cannot determine whether GPS's prior art products such as the UP7 have

23   them."  (Dkt. No. 239 at 4.)  Defendant cites deposition testimony, during which Babcock was

24

1   asked whether Defendant's UltraPro7 product had a base receiver.  (Dkt. No. 240-1 at 6.)

2   Babcock responded that his task with respect to the devices in question was to rebut Dr.

3   Cameron's opinions that they were prior art and acceptable non-infringing alternatives, not to

4   perform "an element-by-element analysis" of the device.  (*Id.*)

5          The Court agrees with Plaintiff that the relevant question with respect to infringement is

6   whether a "portion" of the accused docking cradle is "adapted to receive" the protective cover.

7   In its preliminary non-infringement contentions, Defendant asserted a base receiver was "a lower

8   lip extending upward from the tray of the cradle that envelopes (sic) the lower edge and lower

9   side portions of the cover holding the electronic device."  (Dkt. No. 208-15 at 8.)  Defendant

10  argued the Accused Products do not infringe Plaintiff's patents because they "do[] not have any

11  such a (sic) lower lip . . . but instead ha[ve] two prongs that hold the bottom of the case."[1]  (*Id.* at

12  9.)

13         In his initial expert report, Babcock opined that each of the Accused Products includes "a

14  docking cradle configured to receive the cover and comprising a base receiver to receive the

15  cover."  (Dkt. No. 208-11 at 200.)  Babcock stated that "[e]ach accused docking cradle includes a

16  docking cradle, which comprises a base receiver configured to receive the cover for an electronic

17  device."  (*Id.*)  Babcock further opined that each accused docking cradle comprises a base

18  receiver as construed by the Court in its claims construction order "because it is a docking cradle

19  with a portion adapted to receive the electronic device cover."  (*Id.* at 202.)

20

21  [1] In her expert report, Dr. Cameron opined that Defendant's products do not infringe because
    "[i]n the accused products, it is the case that receives claws of the cradle, not the *base* of the
22  cradle that receives the case as in the asserted claims." (Dkt. No. 208-4 at 55.)  Because this
    opinion was new and different from Defendant's preliminary noninfringement contentions, the
23  Court has stricken this portion of Dr. Cameron's opinion.  (Dkt. No. 254 at 16–18.)  The Court
    noted that its construction of the term "base receiver" did not include any reference to a lower
24  lip.  (*Id.* at 17.)

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 207, 249) - 7

1    Based on the evidence presented, there does not appear to be a genuine factual dispute

2    concerning whether some portion of the docking cradle is adapted to receive the electronic

3    device cover.  Defendant's own promotional materials describe a docking cradle with "[c]radle

4    [h]ooks" that "[l]ock in [the] [t]ablet for a [s]ecure and [t]ight [f]it".  (Dkt. No. 209-8 at 10.)  The

5    presence of additional components that hold the electronic device cover in place, variously

6    referred to in the pleadings as "prongs," "claws," or "cradle hooks" is not an element of the

7    Court's construction of the term and does not preclude the Accused Products from having a base

8    receiver.  *A.B. Dick Co. v. Burroughs Corp.*, 713 F.2d 700, 703 (Fed. Cir. 1983) ("It is

9    fundamental that one cannot avoid infringement merely by adding elements if each element

10   recited in the claims is found in the accused device."); *Vulcan Eng. Co., Inc. v. Fata Aluminium,*

11   *Inc.*, 278 F.3d 1366, 1375–1376 (Fed. Cir. 2002) ("when all of the claimed features are present in

12   the accused system, the use of additional features does not avoid infringement.").  Accordingly,

13   based on the Court's claim construction, the Court finds there is no genuine dispute of fact that

14   the Accused Products have a base receiver.

15                          *ii.    Rim to Guide Proper Mating*

16   The term "a rim guide to proper mating" appears in claims 1, 8, and 10 of the '026 patent,

17   claims 1 and 11 of the '515 patent, and claims 1 and 10 of the '334 patent.  Plaintiff argues there

18   is no dispute that the docking connector on the Accused Products has a rim and that the rim

19   guides mating of the complementary shaped connector on the protective cover to the docking

20   connector.  (Dkt. No. 207 at 10.)  Plaintiff cites Babcock's expert report, in which he opined that

21   "the rim on the docking connector of each accused docking cradle guides proper mating of the

22   contactor to the docking connector of the docking cradle . . . [t]his is evident from the

23   complementary structure of the male and female connectors."  (Dkt. No. 208-11 at 209–210.)  In

24

1   response, Defendant cites Dr. Cameron's rebuttal report, which "shows that the edges (sic)

2   Magtron magnetic connector are not male-female rims" and "completely dismantles" the

3   argument that the edges "guide" mating of the connector "by showing that the device works fine

4   without those edges." (Dkt. No. 239 at 5.)

5       In construing the term "rim," the Court adopted the plain and ordinary meaning of this

6   term. (Dkt. No. 124 at 17.) In her report, Dr. Cameron asserts the Accused Products do not have

7   a rim based on the plain and ordinary meaning of the term because "[n]either what Mr. Babcock

8   points to as a female connector, nor what he points to as a male positioning interface has a rim,

9   nor what he points to as a docking connector has a rim." (Dkt. No. 208-4 at 64.) Dr. Cameron

10  explains there is no rim on the docking connector because "[i]n the context of the asserted

11  patents, a 'rim to guide proper mating' is not simply a straight line at the edge of a part." (*Id.* at

12  64–65.) Dr. Cameron argues that each side of the MAGTRON system has a surface with

13  contacts and that the two surfaces contact when the case of electronic device is held by the claws

14  of the cradle. (*Id.* at 65.) Dr. Cameron asserts that the "edges" labeled by Babcock "are not rims

15  but just straight edges that do not even encompass the contactor surface." (*Id.*) Dr. Cameron

16  claims that if the features of the MAGTRON system were considered rims then the term would

17  lose all meaning "because every edge of any contacting surface would then be a rim." (*Id.*)

18      To demonstrate the lack of guidance provided by the structures Babcock alleged were

19  critical to guide proper mating, Cameron removed the structures from the MAGTRON charging

20  wire. (*Id.* at 65–66.) Cameron argues this "shaved-off" device worked well because "the

21  contacts were held together, just holding the two pieces near each other in open air and letting

22  the magnets pull them together." (*Id.* at 66.) Cameron contends that in this modified device,

23  "the lack of edges is unnoticeable, demonstrating their lack of function in such devices." (*Id.*)

24

Based on the Court's construction, the Court finds there is no genuine dispute of material fact that the Accused Products have a "rim" that "guides" proper mating.  During the Markman hearing, the Court explained its understanding of the term, citing examples of rims including a basketball rim, a rim of a cup, the rim of a tub, and the rim of a cutting board, where "[t]he outer portion is the rim."  (Dkt. No. 208-28 at 3.)  The Court also cited the example of a sink with a cover that fits over the sink and which can be used as a cutting board.  (*Id.* at 4.)  The Court noted that the sink had a rim and that "the portion that you put into the sink to cover it, to make it all flat, that has an outer rim."  (*Id.*)  The Court further noted that in this example, the sink's rim is "like a female rim versus the portion that you put over the sink to make it all flat has a [male] rim."  (*Id.*)  Based on this understanding and the evidence presented, it is clear that the Accused Products have a rim.

Dr. Cameron's argument concerning a modified version of the MAGTRON system is unpersuasive and insufficient to raise a genuine issue of material fact concerning whether the Accused Products have a rim that "guides" proper mating.  This is because the removal of a rim in the Accused Products does not negate the rim's purpose.  As Babcock identifies, "[t]he fact that the two connectors can be forced together mechanically without the rim does not mean that the rim, when present, plays no role in guiding the two connectors together."  (Dkt. No. 208-13 at 43–44.)  The rim in the Accused Products still serves a guiding purpose and to the extent the magnets play any role in mating between the connectors, that role would be complimentary and would not subsume the rim's purpose.  (*See id*. at 48) ("such role is minimal or negligible").

Accordingly, based on the Court's claim construction, the Court finds there is no genuine dispute of fact that the Accused Products have a rim to guide proper mating.

### iii.   Male and Female Connectors (Portions)

1   The terms "male portion" and "female portion" appear in claim 11 of the '026 patent.

2   The Court construed "male portion" as being consistent with its plain and ordinary meaning.

3   However, to assist the trier of fact, the Court construed "male connector" and "male portion" as

4   "a connector that protrudes from the surrounding area for mating with a connector

5   having a complementary shaped inward recess." (Dkt. No. 124 at 17.)  The Court similarly

6   construed "female portion" as being consistent with its plain and ordinary meaning.  To assist the

7   trier of fact, the Court construed "female connector," "female portion," and "female receptacle"

8   as "an inwardly recessed connector for mating with a complementary shaped protruding

9   connector."  (*Id.*)

10   Plaintiff argues Defendant's Rule 30(b)(6) witness confirmed that the connector on the

11   protective cover "sticks out" from the surrounding area and that the female connector is

12   complementary in shape to the male connector.  (Dkt. No. 207 at 12.)  Plaintiff further contends

13   Defendant admitted that the docking connector in the Accused Products has a "recess."  (*Id.*)  In

14   response, Defendant again cites Babcock's deposition testimony, in which he was asked whether,

15   prior to reading Claim 1 of the '309 patent, he had ever looked at a Samsung mobile phone and

16   thought that the phone had a male connector.  (Dkt. No. 240-1 at 2–3.)  Babcock responded that

17   he was unable to answer because the male connector at issue was part of the claim language

18   Defendant was preventing him from using in his answer, and ultimately concluded that the

19   question "ma[de] no sense."  (*Id.* at 3.)  The Court fails to see how this exchange raises a genuine

20   issue of material fact with respect to the presence of these claim elements in the Accused

21   Products.

22   In her report, Dr. Cameron argued that, based on the Court's construction, the

23   MAGTRON system is not a male and female connector.  (Dkt. No. 208-4 at 62.)  Dr. Cameron

24

references an image of the case and charging cord used with the S3/S4 product to argue the

MAGTRON system is not a male and female connector because "[t]here is no receptacle or

recess on the charging cord" the charging cord "is simply held in place by magnets." (Dkt. No.

208-4 at 61–62.) Dr. Cameron further states that the "slight curvature of the contact face in the

MAGTRON system does not turn the end of the charging cord into a female connector or

receptacle" and argues the MAGTRON system "does not suddenly become a male and female

connector simply by incorporation into the accused products as none of the surrounding

structures are used." (*Id.* at 62.)

Plaintiff argues Dr. Cameron analyzed non-accused products, concluded those products

did not have male or female connectors under the Court's construction, and then asserted that

those products were identical to the Accused Products. (Dkt. No. 207 at 13.) Plaintiff asserts

that Dr. Cameron's analysis focused on the case and charging cord used with the S3/S4 product,

which are prior art products not accused of infringement, and contends Dr. Cameron is setting

forth an improper "practicing the prior art" defense to infringement. (*Id.*)

Plaintiff cites Dr. Cameron's deposition testimony, during which she stated the

MAGTRON electrical connector was "part of the system that's accused" of patent infringement,

but acknowledged that the case and charging cord used with the S3/S4 product were not accused

of infringement. (Dkt. No. 208-6 at 9.) Elsewhere in her deposition, Dr. Cameron argued that

while there were "minor differences" between prior art products such as the S3/S4, Mega, and

UP7 and the Accused Products, all the products were "basically the same" for purposes of claims

analysis. (*Id.* at 11.)

A "practicing the prior art" defense typically refers to the situation where an accused

infringer "compares the accused infringing behavior to the prior art in an attempt to prove that its

conduct is either noninfringing or the patent is invalid as anticipated because the accused conduct is simply "practicing the prior art." *Cordance Corp. v. Amazon.com, Inc.*, 658 F.3d 1330, 1337 (Fed. Cir. 2011). "[S]uch a defense . . . conflate[s] the infringement and invalidity inquiries. In essence, an accused infringer forsakes any comparison between the asserted claims and the accused product, relying instead upon purported similarities between the accused product and the prior art." *01 Communique Lab'y, Inc. v. Citrix Sys., Inc.*, 889 F.3d 735, 742 (Fed. Cir. 2018).

Defendant does not respond to Plaintiff's contention that Dr. Cameron's report presents a "practicing the prior art" defense.  In her report, Dr. Cameron analyzed non-accused products with certain components included in the Accused Products, concluded these non-accused products did not have male and female connectors, and based her conclusion on the assumption that the non-accused prior art products were "basically the same" as the Accused Products for purposes of claims analysis.  In so doing, Dr. Cameron has set forth an improper "practicing the prior art" defense to infringement which cannot be relied upon at the summary judgment stage.

Plaintiff further contends Dr. Cameron's opinion is at odds with admissions made elsewhere by GPS.  Plaintiff argues the alleged prior art products materially differ from the Accused Products because the case of the S3/S4 product lacks a male connector.  (Dkt. No. 207 at 14.)  In support of its argument, Plaintiff cites documents submitted in support of Defendant's invalidity contentions, in which Defendant argues one of the Accused Products lacks a male connector.  (Dkt. Nos. 208-13 at 34; 208-18 at 13.)  Plaintiff also argues that Dr. Cameron's opinion that the accused docking connector lacks a "recess" contradicts GPS's contentions.  (Dkt. No. 207 at 14.)  Plaintiff contrasts Dr. Cameron's opinion with GPS's infringement and invalidity contentions, in which it asserts the magnetic connector does have a recess.  (Dkt. No. 208-15 at 34, 57, 64.)  Plaintiff contends that Dr. Cameron's suggestion that the connectors must

1   "hold" each other conflicts with the Court's claim construction, which contains no such

2   requirement.  (Dkt. No. 207 at 14.)  Defendant does not respond to any of these arguments.

3       Accordingly, the Court finds there is no genuine dispute of material fact that these claim

4   elements are present in the Accused Products.

5           b.   Claims 10 and 14–16 of the '334 Patent

6       Plaintiff contends Defendant admitted, in an inter partes review petition filed with the

7   United States Patent and Trademark Office ("PTO"), that the Accused Products contain every

8   limitation of claims 10, and 14–16 of the '334 patent.  (Dkt. No. 207 at 15.)  Plaintiff cites

9   annotated descriptions of an accused "Flex" product submitted to the PTO by Defendant.  (*Id.* at

10  15–16.)  Plaintiff argues Defendant's Rule 30(b)(6) witness, GPS founder Jack Dovey,

11  confirmed these annotations accurately depicted various features of the Accused Products.  (*Id.*

12  at 16.)  Plaintiff argues summary judgment is appropriate based on GPS's admissions.  (*Id.*)

13  Defendant argues the inter partes review was a different proceeding with a different burden of

14  proof.  (Dkt. No. 239 at 6.)  Defendant contends the inter partes review petition was based on the

15  "PO's [Patent Owner's] theories of infringement" which it never agreed with or endorsed.  (*Id.*)

16      In its inter partes review petition filed with the PTO, Defendant argued that all the

17  challenged claims in the '334 patent were "each separately, independently anticipated by AP

18  Publications"[2] based on a priority date of December 27, 2018.  (Dkt. No. 208-23 at 3.)

19  Defendant argued that the publications cited in its petition disclosed all the limitations contained

20  in claims 10, 14, 15, and 16 of the '334 patent.  (*Id.* at 15–18.)

21

22

23  ───────────────────
    [2] "AP Publications" refers to several webpages and YouTube videos which allegedly featured
24  Defendant's Accused Products prior to December 27, 2018.  (Dkt. No. 208-23 at 4.)

1    In her expert report, Dr. Cameron opined that the "connector" referenced in claim 10 of

2    the '334 patent "is encased in essentially unremovable plastic held by hex screws, which would

3    not be available for the ordinary person." (Dkt. No. 208-4 at 70.) Plaintiff argues Dr. Cameron's

4    analysis conflicts with Dovey's admissions and is not credible. (Dkt. No. 207 at 16.) In

5    response, Defendant offers an incomplete sentence, stating the "the adapter in the case is not at

6    all detachable in the S3/S4 and MEGA[3], but is more easily (sic)". (Dkt. No. 239 at 6.)

7    It is unclear what product Dr. Cameron references when she uses the phrase "[d]etachable

8    connector." (*See* Dkt. No. 208-4 at 70.) This term does not appear in claim 10 of the '334

9    patent. Rather, the claim addresses an "adapter" which "is detachable from the hard shell."

10   (Dkt. No. 70-4 at 54.) Presumably, Dr. Cameron is referring to the loose cord MAGRTON

11   connector used in the S3, S4, and MEGA cases (*see* Dkt. No. 208-12 at 31–35), which do appear

12   to be encased in essentially unremovable plastic held by screws and which are not in dispute.

13   The annotated image provided by Defendant in connection with its inter partes review

14   petition shows a disassembled version of GPS's "Flex" product in which the adapter has been

15   detached from the hard shell. (Dkt. No. 208-23 at 7.) During his Rule 30(b)(6) deposition,

16   Dovey confirmed that these annotations accurately described the components of GPS Lockbox's

17   product. (Dkt. No. 208-21 at 13.) In a declaration submitted with GPS's petition for inter partes

18   review, Dovey stated that "[l]ike several versions of our products, the adapter of the Flex product

19   shown [above] was detachable from the hard shell." (Dkt. No. 208-24 at 8.)

20   In its order regarding claims construction, the Court questioned Defendant's assertion

21   that the adapter was "essentially unremovable" from the hard shell, finding that a person of

22

23   ───────────────
     [3] Plaintiff concedes these alleged prior art products lack a detachable adapter. (Dkt. Nos. 208-12

24   at 70–73; 244 at 9.)

1    ordinary skill in the art or a layperson would understand a user's ability to "detach" the adapter

2    from the hard shell without destroying the cover.  (Dkt. No. 124 at 7.)  The image provided by

3    Defendant in connection with its petition for inter partes review indicates that the adapter is

4    detachable from the hard shell, and contrary to Dr. Cameron's purported opinion, does not

5    appear to be affixed in position by hex screws.  Accordingly, the Court finds there is no genuine

6    dispute of material fact concerning whether the Accused Product has an adapter that is

7    detachable from the hard shell.

8            The term "a rim guide to proper mating" also appears in claims 1 and 10 of the '334

9    patent.  For the reasons discussed above, the Court finds there is no genuine dispute of material

10   fact concerning whether this claim element is found in the Accused Products.

11           Defendant also argues, briefly, that several other claim terms of the '334 patent are

12   disputed between the parties including a) "male positioning interface/male plug", b) "female

13   socket", and c) "hard shell".[4]  (Dkt. No. 239 at 6.)  Defendant re-asserts its arguments concerning

14   male and female connectors, which the Court finds unpersuasive for the reasons discussed above.

15   With respect to hard shell, Defendant argues Babcock has taken the "non-sensical position" that

16   a skilled artisan reading claim 10 in light of the disclosure of the '334 patent would not

17   understand the term hard shell limited to being used with a "soft cover."  (Dkt. Nos. 208-11 at

18   246; 239 at 6.)  The parties did not dispute the construction of the term "hard shell" in isolation

19   at the claims construction stage.  The parties did dispute the construction of the term "the adapter

20   is detachable from the hard shell by a user," but focused their arguments on whether the adapter

21

22   _____

     [4] Plaintiff notes that Defendant disclosed its arguments concerning these claim terms for the first
23   time in its opposition.  (Dkt. No. 244 at 9.)  Plaintiff also argues, persuasively, that several of
     Defendant's arguments concerning these terms are at odds with GPS's own admissions and
24   descriptions of its products.  (*Id.*)

1   was "detachable" not whether the shell was "hard."  Since the Court has not construed this term,

2   it cannot evaluate whether this claim element is present in the Accused Products.

3          Accordingly, the Court finds there is no genuine dispute of material fact that all the

4   limitations of claims 10 and 14–16 of the '334 patent are present in the Accused Products.

5          All told, Plaintiff's motion for summary judgement of infringement is GRANTED as to

6   claim 11 of the '026 patent and claims 10 and 14–16 of the '334 patent.

7                    c.   Indirect Infringement

8          Plaintiff argues that for any claim Defendant directly infringes, the Court may enter

9   judgment that Defendant induces infringement of that claim by third parties.  (Dkt. No. 207 at

10  16–17.)  Plaintiff further asserts that Defendant contributes to the infringement of any system

11  claim comprising both a cover and a docking cradle by providing those component parts, "*e.g.*,

12  claim 11 of the '026 patent and claim 16 of the '334 patent."  (*Id.*)

13         Liability for indirect infringement—whether inducement or contributory infringement—

14  may arise only if the claim is predicated on direct infringement.  *Limelight Networks, Inc. v.*

15  *Akamai Technologies, Inc.* 572 U.S. 915, 921 (2014) (citing *Aro Mfg. Co. v. Convertible Top*

16  *Replacement Co.*, 365 U.S. 336, 341 (1961)).  The Court has found *supra* that there is no genuine

17  dispute of material fact that the '026 and '334 patents are infringed.  However, Plaintiff never

18  claimed indirect infringement of the '026 and '334 patents, only the '515 and '309 patents.  (Dkt.

19  No. 43 at 6–18).  Indirect infringement therefore cannot be granted on these two patents; indirect

20  infringement claims for these two patents were never plead.  And Plaintiff did not move for

21

22

23

24

summary judgement on claims 1 or 3 of the '309 patent,[5] which means the Court has not made a

finding of direct infringement.

Accordingly, Plaintiff's motion for summary judgment of induced and contributory

infringement is DENIED.

2.   Invalidity

Patents enjoy a "presumption of validity" that "can be overcome only through clear and

convincing evidence." *Eli Lily and Co. V. Barr Laboratories, Inc.*, 251 F.3d 955, 962 (Fed. Cir.

2001) (citing 35 U.S.C. § 282).  Accordingly, "a moving party seeking to have a patent held not

invalid at summary judgement must show that the nonmoving party, who bears the burden of

proof at trial, failed to produce clear and convincing evidence on an essential element of a

defense upon which a reasonable jury could invalidate the patent." *Id*.

a.   Anticipation

Under 35 U.S.C. § 102, a patent may be found invalid as anticipated if clear and

convincing evidence demonstrates that "every element and limitation of the claim was previously

described in a single prior art reference, either expressly or inherently, so as to place a person of

ordinary skill in possession of the invention." *Sanofi-Synthelabo v. Apotex, Inc*., 550 F.3d 1075,

1082 (Fed. Cir. 2000).  Anticipating prior art must also be enabling, meaning that "a person of

ordinary skill in the field of the invention can practice the subject matter based on the [prior art],

without undue experimentation." *Id*.  The Federal Circuit has emphasized that "mere proof that

the prior art is identical, in all material respects, to an allegedly infringing product cannot

constitute clear and convincing evidence of invalidity." *Zenith Electronics Corp. v. PDI*

---

[5] Eight claims remain live: claims 1 and 11 of the '026 patent; claims 10 and 14–16 of the '334
patent; and claims 1 and 3 of the '309 patent. (Dkt. No. 252 at 16.)

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 207, 249) - 18

*Commc'n Sys.*, 522 F.3d 1348, 1363 (Fed. Cir. 2008).  Instead, "testimony concerning anticipation must be testimony from one skilled in the art and must identify each claim element, state the witnesses' interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art reference."  *Schumer v. Laboratory Comput. Sys., Inc.* 308 F.3d 1304, 1315 (Fed. Cir. 2002).

Plaintiff asserts that the court may grant summary judgement of no anticipation as to all the Asserted Claims because Defendant's expert "fails to perform an element-by-element analysis comparing the limitations of *any* Asserted Claim to the three alleged prior art products." (Dkt. No. 207 at 18) (emphasis in original).[6]  Defendant responds that "there is no need to do an element-by-element comparison between the claims-in-suit and the S3/S4, MEGA, and UP7 because those products, in terms of whether they infringe and/or anticipate, are the same as the accused products."  (Dkt. No. 239 at 6.)  To support this argument, Defendant cites a classic rule: "[t]hat which would literally infringe if later in time anticipates if earlier than the date of invention."  *Id.* (citing *Lewmar Marine, Inc. v. Barinet, Inc*. 827 F.2d 744, 747 (1987)). However, the S3/S4, MEGA, and UP7 products are not themselves accused of infringement. Unless the allegedly anticipating products are *also* the products accused of infringement—in which case there is a narrow exception to the required element-by-element anticipation analysis—the caselaw is clear that a defendant must compare each element of the patentee's claims with the alleged prior art reference to produce clear and convincing evidence of anticipation.  *See Vanmoor v. Wal–Mart Stores, Inc*., 201 F.3d 1363, 1366 (Fed. Cir. 2000);

---

[6] In the alternative, Plaintiff argues that the court can grant summary judgement of no anticipation or obviousness as to all Asserted Claims based on the S3/S4 and Mega products and summary judgement of no anticipation or obviousness for the '026 and '309 patents based on the UP7.  (Dkt. No. 207 at 20–22.)

*Bennet Regulator Guards, Inc. v. Canadian Meter Co. Inc.* 184 Fed. Appx. 977, 978 n.1 (Fed. Cir. 2006).  Indeed, *Lewmar,* the case Defendant cites to support its theory, affirms the rule that a Defendant claiming anticipation must prove "the presence in a single prior art disclosure of each and every element of a claimed invention."  *Lewar*, 827 F.2d at 747.

Thus, Defendant cannot survive a summary judgement motion for no invalidity by anticipation without providing evidence that compares each of the claims to the alleged prior art items.  *See Schumer*, 308 F.3d at 1315; *Motorola, Inc. v. Interdigital Tech. Corp.*, 121 F.3d 1461, 1473 (Fed. Cir. 1997) (finding that "[a]n expert's conclusory testimony, unsupported by the documentary evidence" is not sufficient to satisfy the "rigors of [showing] anticipation"); *Nextec Applications v. Brookwood Companies, Inc.*, 703 F.Supp.2d 390, 423 (S.D. N.Y. 2010) (finding that expert testimony stating the accused products were "the same in all material respects to those practiced and disclosed in prior art" was insufficient and that Defendant "must introduce facts sufficient to enable a jury to find by clear and convincing evidence that one or more of these items of prior art discloses every element" of the asserted claims); *Metaswitch Networks Ltd. v. Genband US LLC*, Case No. 2:14-cv-744-JRG-RSP, 2016 WL 3618831, at *7 (E.D. Tex. Mar. 1, 2016) (finding that "proof that the accused product and the prior art are similar, comparable, or even materially identical, is not sufficient" to prove anticipation); *Inline Connection Corp. v. Earthlink*,  684 F.Supp.2d 496, 513 (D. Del. 2010).  As Plaintiff points out, Defendant, citing nothing, simply suggests that Dr. Cameron's conclusory statement is sufficient to create a genuine dispute of material fact as to whether the alleged prior art anticipates the Asserted Claims.  (*See* Dkt. No. 239 at 6–7) (referencing Dkt. No. 208-2 at 38).  In the context of anticipation analysis, "[i]t is not . . . the task of the district court[] to attempt to interpret

confusing or general testimony to determine whether a case of invalidity has been made out, particularly at the summary judgment stage."[7]  *Schumer*, 308 F.3d at 1316.

Accordingly, because Defendant fails to identify each claim element and clearly explain how it is disclosed in the alleged prior art references, the Court GRANTS Plaintiff's motion for no invalidity by anticipation on summary judgement.

### b.  Obviousness

35 U.S.C § 103 establishes that a patent is invalid "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains."  "Obviousness is a question of law based on underlying factual determinations, including: (1) the scope and content of prior art; (2) differences between prior art and claims; (3) the level of ordinary skill in the art; and (4) objective indicia of nonobviousness."  *PAR Pharm., Inc. v. TWI Pharms., Inc*., 773 F.3d 1186, 1193 (Fed. Cir. 2014) (citing *Graham v. John Deere Co*., 383 U.S. 1, 17–18 (1966)).  A party arguing that a patent is invalid for obviousness "must demonstrate by clear and convincing

---

[7] The Federal Circuit further instructed that "to accept confusing or generalized testimony as evidence of invalidity is improper. The risk is great that the confusion or generality is the result, not of an inarticulate witness or complex subject matter, but of a witness who is unable to provide the essential testimony."  *Schumer*, 308 F.3d at 1316.  By failing to provide the court with claim charts, Plaintiff has provided both "confusing" and "generalized" testimony as evidence of invalidity. Indeed, other trial courts have found this failure sufficient to render the expert report in question inadmissible. *See e.g., Adasa Inc. v. Avery Dennison Corp*., Case No. 6:17-cv-01685-MK, 2023 WL 3775332 at *6 (D. Or. 2023) ("To be admissible under Rule 702 and *Daubert*, the expert's report must perform an element-by-element comparison of each claim to each prior art reference . . . . A bare side-by-side chart of the elements of the claim and the prior art references, without analysis, is "wholly and irretrievably inadequate. . . . But [the expert's] report offers nothing more than an ultimate conclusion on anticipation devoid of analysis or reasoning. Without such an analysis, the report provides nothing additional that would help the jury draw that conclusion for itself.") (Internal citations and quotations omitted.).

1    evidence that a skilled artisan would have had reason to combine the teaching of the prior art

2    references to achieve the claimed invention, and that the skilled artisan would have had a

3    reasonable expectation of success from doing so."  *In re Cyclobenzaprine Hydrochloride*

4    *Extended–Release Capsule Patent Litig.*, 676 F.3d 1063, 1068–1069 (Fed. Cir. 2012) (internal

5    quotations removed).

6         Plaintiff argues that "Dr. Cameron asserts in a conclusory fashion that a skilled artisan

7    could modify any of the S3/S4, Mega, and UP7 to include a male connector, but fails to explain

8    *how* that could be accomplished for any of the three products, and she fails to explain *why* a

9    skilled artisan would do so."  (Dkt. No. 207 at 21) (citing Dkt. No. 208-2 at 41–42) (emphasis in

10   original).  Plaintiff further suggests that Dr. Cameron's obviousness analysis is based on

11   impermissible hindsight reasoning because it "works backward from the invention in a manner

12   the Federal Circuit has repeatedly cautioned against."  (*Id.*) (citing *Otsuka Pharm. Co. v. Sandoz,*

13   *Inc.*, 678 F. 3d 1280, 1296 (Fed. Cir. 2012)).  Defendant offers no response to Plaintiff's

14   obviousness arguments.  (*See generally* Dkt. No. 239.)

15        The Court agrees with Plaintiff that Defendant does not provide clear and convincing

16   evidence of obviousness.  Although Dr. Cameron states that "it would have been obvious to

17   modify" the products and "easy to implement" the modification (Dkt. No. 208-2 at 41–42), she

18   does not "explain the reasons one of ordinary skill in the art would have been motivated to select

19   the references and to combine them to render the claimed invention obvious."  *In re Kahn*, 441

20   F.3d 977, 986 (Fed. Cir. 2006) (citing *In re Rouffet*, 149 F.3d 1350, 1357–1359 (Fed. Cir. 1998)).

21   When a defendant does not "explain the motivation, or the suggestion or teaching," a court infers

22   an impermissible "entry of hindsight into the obviousness analysis."  *Id.*; *see also In re Kubin*,

23   561 F.3d 1351, 1359 (Fed. Cir. 2009) ("where a defendant merely throws metaphorical darts at a

24

board filled with combinatorial prior art possibilities, courts should not succumb to hindsight claims of obviousness.").  While Dr. Cameron claims that "[i]t would have been desirable for a [person of ordinary skill in the art] to use this common setup," she provides no specific analysis as to how or why, and her reasoning cuts off mid-sentence.  (*See* Dkt. No. 208-2 at 42). "'Obvious to try' has long been held not to constitute obviousness."  *In re Deuel*, 51 F.3d 1552, 1559 (Fed. Cir. 1995).

Accordingly, because Defendant does not provide clear and convincing evidence of obviousness, the Court GRANTS Plaintiff's motion for no invalidity based on obviousness on summary judgement.

c.   Written description

35 U.S.C. § 112 provides that a patent specification "shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains . . . to make and use the same."  The written description "requirement is satisfied only if the inventor conveys with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession of the invention, and demonstrates that by disclosure in the specification of the patent."  *Biogen Int'l GMBH v. Mylan Pharms. Inc.*, 18 F.4th 1333, 1341–1342 (Fed. Cir. 2021) (internal quotations and brackets omitted) (quoting *Nuvo Pharms. (Ireland) Designated Activity Co. v. Dr. Reddy's Lab'ys Inc.*, 923 F.3d 1368, 1376 (Fed. Cir. 2019)).  An inventor may show possession "by descri[bing] the invention, with all its claimed limitations" through "such descriptive means as words, structures, figures, diagrams, formulas, etc."  *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997).

1    "The term 'possession' in the context of written-description jurisprudence entails an

2    objective inquiry into the four corners of the specification from the perspective of a skilled

3    artisan." *Biogen*, 18 F.4th at 1342 (internal quotations and brackets removed) (quoting *Ariad*

4    *Pharms., Inc. v. Eli Lilly & Co*., 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc)).   Depending on

5    the context, "the amount of disclosure necessary to satisfy the written-description requirement"

6    will vary according to factors that include the extent and content of prior art and the

7    predictability of the feature at issue.   *Ajinomoto Co. v. Int'l Trade Comm'n*, 932 F.3d 1342, 1359

8    (Fed. Cir. 2019) (quoting *Ariad*, 398 F.3d at 1350).   Thus, "[i]n some circumstances . . . a

9    patentee may rely on information that is 'well-known in the art' for purposes of meeting the

10   written description requirement, because the specification is viewed from the perspective of one

11   of skill in the relevant art." *Id*. (internal quotations removed) (citing *Bos. Sci. Corp. v. Johnson*

12   *& Johnson*, 647 F.3d 1353, 1366 (Fed. Cir. 2011).   The Federal Circuit has referred to the

13   "mechanical world," for example, as a "fairly predictable field." *Bilstad v. Wakalopulos*, 386

14   F.3d 1116, 1126 (Fed. Cir. 2004).   Ultimately, "invalidating a claim requires a showing by clear

15   and convincing evidence that the written description requirement has not been satisfied."

16   *Invitrogen Corp. v. Clontech Lab'ys, Inc*., 429 F.3d 1052, 1072 (Fed. Cir. 2005).

17   Dr. Cameron's expert report identifies three claim elements that she alleges are lacking in

18   written description support: "back support surface" (appearing in claims 1 and 14 of the '026

19   patent); "docking support surface" (appearing in claims 1 and 14 of the '026 patent and claim 1

20   of the '309 patent); and "base receiver" (appearing in claims 1 and 14 of the '026 patent and

21   claim 1 of the '309 patent).   Plaintiff argues that "Dr. Cameron's cursory analysis does not

22   compare the properly construed claims to the patents' specifications to determine whether a

23   skilled artisan would understand the inventor to have invented what is claimed." (Dkt. No. 207

24

at 23) (citing Dkt. No. 208-2 at 28).  In response, Defendant offers a singular, nearly

indecipherable sentence: "As for written description and the claim elements 'back support

surface,' 'docking support surface,' or 'base receiver,' while there may arguably have been

support in an early application as they were filed, the way the terms have been twisted – to the

point where [Plaintiff's expert] cannot interpret them . . . shows that there is a fact issue."  (Dkt.

No. 239 at 10.)  Defendant cites to Dr. Cameron's expert report in support of this argument.  (*Id*.)

   Having reviewed the expert report in question, the Court finds that it fails to provide clear

and convincing evidence that the claim elements at issue lack written description support.  As

Plaintiff points out, Dr. Cameron does not offer any specific analysis explaining why the claims,

specification, and figures of each patent fail to provide a sufficient written description of the

claim elements at issue.  (*See* Dkt. No. 208-2 at 28.)  For Dr. Cameron's analysis to raise a

genuine dispute of material fact, she would have to explain *why*, for example, the specification of

the '026 patent—which describes parts of an embodiment of the claimed docking cradle—fails

to sufficiently disclose the back support surface part of the base receiver.[8]  (*See* Dkt. No. 70-2 at

36–37.)  Instead, she states that "If NPI's . . . understanding of the plain and ordinary meaning of

'back support surface' is correct, then there is no written description support." (Dkt. No. 208-5 at

26).  This conclusory argument does not amount to clear and convincing evidence and suggests

that Dr. Cameron was not using the plain and ordinary meaning of the claim elements, as

construed by the Court, as the basis for her written description analysis.  The Court, for its part,

---

[8] The specification states, in part: "FIG **3**, FIG, **4**, and FIG **5** describe by example and without limitation a docking cradle 5 of a type useful with protective cover 100.  For example, docking cradle 5 has a tray 7. . . . The tray 7 includes a back support surface **101** to support a back of the cover **100** and a docking support surface **103** extending away from the back support surface. The back support surface **101** and docking support surface **103** may form an angle in a range of 90 to 130 degrees or more."  (Dkt. No. 70-2 at 50.)

1    reminds Defendants that judges are not responsible for hunting through the thousand-page

2    record.

3            Accordingly, because Defendant fails to provide evidence to support its arguments that

4    the claim elements in question lack written description support, the court GRANTS Plaintiff's

5    motion for no invalidity based on lack of written description on summary judgement.

6            d.   Effective filing dates of asserted claims of the '026 patent and '309 patent

7            Plaintiff moved for summary judgement that claims 1 and 11 of the '026 patent and

8    claims 1 and 3 of the '309 patent are entitled to an effective filing date of February 24, 2014—

9    the filing date of the application from which the '986 patent issued.[9]  (Dkt. No. 207 at 24.)  "In

10   order to gain the benefit of the filing date of an earlier application under 35 U.S.C. § 120, each

11   application in the chain leading back to the earlier application must comply with the written

12   description requirement of 35 U.S.C. § 112."  *Lockwood v. Am. Airlines, Inc*., 107 F.3d 1565,

13   1571 (Fed. Cir. 1997).  This means that a skilled artisan must be able to find that the inventor had

14   possession of the claimed subject matter based on the specification in the parent application.

15   *Merck Sharp & Dohme Corp. v. Microspherix LLC*, 814 F. App'x 575, 579–580 (Fed. Cir.

16   2020).  Plaintiff's motion cites to the record to explain how each disputed element of claims 1

17   and 3 of the '309 patent and claims 1 and 11 of the '026 patent is disclosed in the '986

18   application.  (Dkt. No. 207 at 24–29.)  Defendant does not respond.  The Federal Rules of Civil

19   Procedure are clear that "[i]f a party fails to properly support an assertion of fact or fails to

20   properly address another party's assertion of fact" a court may "consider the fact undisputed for

21

22

23   _____

[9] This remains a live issue because Plaintiffs argue that the Accused Products violate the on-sale
24   bar. (Dkt. No. 207 at 24 n.17.)

1   the purposes of the motion." Fed. R. Civ. P. 56(e)(2).  Accordingly, the Court finds the effective

2   filing dates unchallenged.

3         Furthermore, if the court were to evaluate the argument on the merits, the evidence on the

4   record supports the finding that there is no genuine dispute of material fact as to whether the

5   '986 application discloses the four disputed elements: a "rim guide to proper mating," a "base

6   receiver," a "back support surface," and a "docking support surface."  Citing to Figures 3–5 of

7   the '986 Application—which are identical to those in the '026 patent—Babcock explains that

8   "[a] skilled artisan would understand that the rim of the female docking connector disclosed in

9   the '986 application guides mating of the male connector of the protective cover by looking at

10  structures disclosed by the figures in the '986 application." (Dkt. No. 208-11 at 99.)  Dr.

11  Cameron's analysis of whether a rim guide to proper mating is disclosed in the '986 application

12  is conclusory and devoid of citations to the relevant patents.  (Dkt. No. 208-2 at 29.)  She does

13  not refute Babcock's analysis, but simply states that "[t]here is no written description support for

14  a 'rim guide to proper making' in applications prior to the '026 patent."  (*Id.*)  To raise a genuine

15  issue of material fact, Defendant would need to explain why the detailed description of the

16  preferred embodiment in the '986 application fails to disclose a rim guide to proper mating to a

17  skilled artisan.  (*See* Dkt. No. 37-2 at 46.)  As for the "base receiver," "back support surface,"

18  and "docking support surface," Dr. Cameron's effective filing date analysis is both conclusory

19  and intermingled with her written description analysis discussed *supra*.  (Dkt. No. 208-2 at 27–

20  28) ("Based on NPI's interpretation of 'back support surface,' there is no written description

21  support anywhere for a 'back support surface.'  In addition, this claim term does not appear in

22  any NPI patent application leading to the Patents-In-Suit prior to [the '515 patent application].").

23

24

1   Conclusory statements devoid of analysis do not rise to the level of clear and convincing

2   evidence.

3         Accordingly, the Court GRANTS Plaintiff's motion for summary judgement that claims

4   1 and 11 of the '026 patent and claims 1 and 3 of the '309 patent have an effective filing date of

5   February 24, 2014.

6             3.  <u>Inequitable Conduct</u>

7         "To hold a patent unenforceable due to inequitable conduct, there must be clear and

8   convincing evidence that the applicant (1) made an affirmative misrepresentation of material

9   fact, failed to disclose material information, or submitted false material information, and (2)

10   intended to deceive the U.S. Patent and Trademark Office ("PTO")." *Cargill, Inc. v. Canbra*

11   *Foods, Ltd*., 476 F.3d 1359,1363 (Fed. Cir. 2007).  The mens rea requirement is substantial:

12           To prevail on a claim of inequitable conduct, the accused infringer must
        prove that the patentee acted with the specific intent to deceive the PTO. A
13           finding that the misrepresentation or omission amounts to gross negligence
        or negligence under a 'should have known' standard does not satisfy this
14           intent requirement. In a case involving nondisclosure of information, clear
        and convincing evidence must show that the applicant made a deliberate
15           decision to withhold a known material reference. In other words, the
        accused infringer must prove by clear and convincing evidence that the
16           applicant knew of the reference, knew that it was material, and made a
        deliberate decision to withhold it.

17   *Therasense, Inc. v. Becton, Dickinson & Co*., 649 F.3d 1276, 1290 (Fed. Cir. 2011) (internal

18   quotations and citations omitted).  Moreover, "even if this elevated evidentiary burden is met as

19   to both elements, the district court must still balance the equities to determine whether the

20   applicant's conduct before the PTO was egregious enough to warrant holding the entire patent

21   unenforceable." *Star Sci., Inc. v. R.J. Reynolds Tobacco Co*., 537 F.3d 1357, 1365 (Fed. Cir.

22   2008) (citing *Monsanto Co. v. Bayer Bioscience N.V.*, 363 F.3d 1235, 1239 (Fed. Cir. 2004)).

23   The Federal Circuit has emphasized that "[t]he need to strictly enforce the burden of proof and

24

1    elevated standard of proof in the inequitable conduct context is paramount because the penalty

2    for inequitable conduct is so severe."  *Star Sci.,* 537 F.3d at 1365.  Summary judgement is

3    properly granted against a party that fails to establish inequitable conduct by clear and

4    convincing evidence.  *Astrazeneca Pharms. LP v. Teva Pharms. USA, Inc*., 583 F.3d 766, 777

5    (Fed. Cir. 2009).

6         Defendant argues that its principals visited NPI's headquarters in March or April of 2014

7    and showed the UP7—with its magnetic connection system—to NPI.  (Dkt. No 239 at 10.)  It

8    asserts that NPI then incorporated "a copycat magnetic connection system" into its application

9    for the patents in suit but withheld from the PTO that the claimed magnets originated with

10   Defendant.  (*Id*. at 11.)  Plaintiff alleges that "the UP7 did not exist in March or April of 2014"

11   and there is no evidence that "Mr. Carnevali knew of the UP7 at the time [of filing], knew it was

12   material prior art, and intentionally withheld it to deceive the PTO."  (Dkt. No. 207 at 34.)  To

13   support its contention about when the UP7 was invented, Plaintiff points to the deposition

14   testimony of the UP7's designer, Kristopher Gebow, and the contemporaneous email

15   correspondence of its now-deceased inventor, Joseph Todrzak.  (*Id.* at 30–32.)  In his deposition,

16   Gebow stated that as of early April 2014, the magnetic charging element was still in drawing

17   form and that no physical product had been created yet.  (Dkt. No. 209-1 at 15.)  Plaintiff also

18   asserts that Defendant's inequitable conduct claim does not stand up to scrutiny because the

19   building in which NPI and GPS principals allegedly met was closed for demolition prior to

20   March 2014.  (Dkt. No. 207 at 34.)  The record confirms that employees were instructed to

21   prepare their items to move out of the building in late October 2013.  (Dkt. No. 209-25 at 3.)

22        Defendant devotes its reply briefing to arguing that the meeting did take place during

23   March or April of 2014 and contesting Plaintiff's assertion that the building in question was

24

1   unoccupied and/or being demolished at that time.  (*See* Dkt. 239 at 7–11.)  Yet, even if the UP7

2   did exist and the alleged meeting did take place, Defendant has provided no evidence on the

3   record of knowledge or specific intent to deceive the PTO.  (*See generally* Dkt. 239.)  Thus,

4   Defendant has not made the required showing of "clear and convincing evidence that the

5   applicant knew of the reference, knew that it was material, and made a deliberate decision to

6   withhold it."  *Therasense,* 649 F.3d at 1290.  The Federal Circuit is clear that "to meet the clear

7   and convincing evidence standard, the specific intent to deceive must be 'the single most

8   reasonable inference able to be drawn from the evidence.'"  *Id*. at 1290–1291 ("when there are

9   multiple reasonable inferences that may be drawn, intent to deceive cannot be found.").

10   Defendant is far from meeting this burden.

11          As Defendant did not defend its other theories of inequitable conduct in its reply brief,

12   the Court finds them unchallenged.  *See* Fed. R. Civ. P. 56(e)(2).  Without direction to any

13   evidence on the record that might support Defendant's theory that Plaintiff "misrepresented facts

14   to the PTO by allegedly removing a statement that biasing contacts were commonly used in

15   docking cradles, [] and then later asserting that a certain prior art reference did not contain

16   biasing contacts," the Court concludes that Defendant has not put forth clear and convincing

17   evidence of inequitable conduct based on this theory.  (Dkt. No. 207 at 35.)  Likewise, Defendant

18   does not offer any evidence to support its inequitable conduct theories based on failure to

19   disclose the S3/S34 or Mega products to the PTO.  (*See generally* Dkt. No. 239.)

20          Accordingly, the Court GRANTS summary judgement of no inequitable conduct.

21          4.   Antitrust Violation

22          Plaintiff argues that if the Court grants its motion to strike Defendant's previously

23   undisclosed damages theories, then Defendant's antitrust counterclaims fail for lack of antitrust

24

injury.  (Dkt. No. 207 at 36.)  In its previous order, the Court granted Plaintiff's motion to strike

the opinion of Frank Bernatowicz concerning antitrust damages.  (Dkt. No. 254 at 8.)  The Court

also granted Plaintiff's alternative motion to exclude Bernatowicz's market share opinion.  (*Id.* at

9.)  In its order, the Court acknowledged the likely dispositive nature of these findings, noting

that precluding Defendant from presenting evidence of damages stemming from its antitrust

counterclaims would undermine those claims and otherwise bar them from proceeding.  (*Id.* at

7.)  Accordingly, Plaintiff's motion for summary judgment as to Defendant's antitrust

counterclaims is GRANTED.

### B.  Defendant's Motion for Partial Summary Judgment (Dkt. No. 249)

#### 1.  Inequitable Conduct

Defendant argues Plaintiff engaged in inequitable conduct by submitting false inventor

oaths, rendering the Patents-in-Suit unenforceable.  (Dkt. No. 249 at 5.)  In its prior order, the

Court explicitly denied Defendant's motion to amend its complaint to include this new

counterclaim, finding that Defendant possessed the facts necessary to make its new inequitable

conduct claim, but demonstrated a lack of diligence by failing to inform Plaintiff or the Court

that it intended to seek leave to add an inequitable conduct claim before the discovery deadline

passed.  (Dkt. No. 248 at 3–4.)  The Court also struck Defendant's first two motions for partial

summary judgment, including one based on Defendant's new inequitable conduct theory.  (*Id.* at

2.)  The Court granted Defendant leave to file a new dispositive motion, but cautioned Defendant

that its new motion should "only address claims contained in the operative pleadings."  (*Id.*)

The Court denied Defendant's motion to amend its complaint to include the previously

undisclosed inequitable conduct counterclaim based on false inventor oaths, which is not a part

of the operative pleadings in this case and which is different from the inequitable conduct

defense and counterclaims raised in Defendant's Amended Answer.  Courts have "repeatedly" declined to allow a defendant to assert a new theory of inequitable conduct "if the answer and counterclaims asserted a different theory of inequitable conduct than that relied upon in summary judgment proceedings."  *Cal. Inst. of Tech. v. Broadcom Ltd.*, Case No. 16-cv-3714-GW (AGRx), 2019 WL 8807748, at *3 (C.D. Cal. July 1, 2019) (collecting cases).

Accordingly, Defendant's motion for summary judgment regarding inequitable conduct is DENIED.

### 2.  Priority Dates

Defendant moves for summary judgement that claims reciting the terms 1) "magnetic coupling element"; 2) "contactor surface is disposed further than any other portion of the adapter from the portable electronic device"; and 3) "hard shell" lack written description support and are therefore not entitled to the priority date of the '986 application.  (Dkt. No. 249 at 18.)

> a.  Claims reciting "magnetic coupling element" and "contactor surface is disposed further than any other portion of the adapter from the portable electronic device"

As Plaintiff points out, of the eight claims that remain live, none recite a "magnetic coupling element" or "contactor surface is disposed further than any other portion of the adapter from the portable electronic device."[10]  (Dkt. No. 252 at 12.)  Accordingly, Plaintiff argues that "the effective filing date of any claim containing these terms [is] irrelevant to the issues here, and any ruling as to those claims would be an impermissible advisory opinion."  (*Id*. at 13.)

---

[10] Only claims 1 and 11 of the '026 patent, claims 10 and 14–16 of the '334 patent, and claims 1 and 3 of the '309 patent remain live.  As Plaintiff describes, "[t]he claim element "magnetic coupling element" is recited in claims 8 and 20 of the '026 patent, claims 6, 10, 16, and 20 of the '515 patent, claims 9 and 18 of the '334 patent, and claims 2, 5, and 9 of the '309 patent, none of which are still in dispute." (Dkt. No. 252 at 12 n.15.)  And the term "contactor surface is disposed further than any other portion of the adapter from the portable electronic device," appears only in claim 1 of the '515 patent.  (*Id*.)

1   Defendant responds that the issue remains live because the priority date of the elements in

2   question is relevant to its invalidity and inequitable conduct arguments.  (Dkt. No. 249 at 18.)

3   However, Defendant's argument that "any claim having such elements is invalid" is moot, as

4   none of the claims with "magnetic coupling element" or "contactor surface…" remain in dispute

5   in this case.  (Dkt. No. 249 at 18.)  Defendant's argument that determining these priority dates is

6   live because it is relevant to Defendant's inequitable conduct theory—which is addressed *supra*

7   Section III.A.3—also fails, as the Court has granted summary judgement of no inequitable

8   conduct and that claim is no longer in dispute.  As such, Defendant's motion for summary

9   judgment on the priority dates of claims containing "magnetic coupling element" or "contactor

10  surface…" is moot because there is no longer a live case or controversy regarding the invalidity

11  or inequitable conduct theories.

12              b.   Claim reciting "hard shell"

13          Claim 10 of the '334 patent recites a "hard shell."  Defendant argues that there is no

14  genuine dispute of material fact that the '986 application fails to disclose a "hard shell" and thus

15  that claim 10 is not entitled to the February 24, 2014, effective filing date of the '986 application.

16  (Dkt. No. 249 at 25.)  The crux of Defendant's argument is that the "shell" in the '986

17  application is described as a "flexible protective shell" and that "flexible" is an antonym of

18  "hard."  (*Id*. at 25–28) (*See* Dkt. No. 233-10 at 6) ("[T]he protective cover includes a flexible 15

19  protective shell that is complimentary in shape to the target electronic device[.]").  Thus,

20  Defendant argues that a skilled artisan would not conclude that the '986 inventor had possession

21  of the "hard shell" element based on the '986 application.  *See Merck*, 814 F. App'x at 579–580.

22  To support this proposition, Defendant cites Dr. Cameron's expert reports, which state that a

23  skilled artisan would not understand the '986 application to disclose a "hard shell." (*See* Dkt. No.

24

239 at 18) (citing Dkt. No. 208-5 at 28) ("[H]ard shell is used to convey the rigid exterior as contrasted with a soft shell which is flexible and not rigid.")

In response, Plaintiff cites Dr. Babcock's expert opinion that "[a] skilled artisan would understand that the protective cover disclosed in the '986 application could be a hard shell." (Dkt. No. 252 at 17) (citing Dkt. No. 233-11 at 12.)  In other words, since a skilled artisan would "be aware of all the prior covers that been out there" that skilled artisan "would understand that the disclosed cover could be soft, hard, flexible, or some combination." (Dkt. No 525 at 21) (citing Dkt. No. 233-12 at 3; Dkt. N0. 208-12 at 26.)   Dr. Babcock further explains it is "common knowledge for people in engineering that hard things [] can be flexible," because they describe different properties—namely, that flexibility is a function of geometry and hardness is a function of the material.  (Dkt. No. 233-12 at 4.)  Plaintiff concludes that Defendant is "advancing [] an untimely claim construction argument." (Dkt. No. 252 at 17.)

The Court concludes that Plaintiff has carried its burden of establishing a genuine dispute of material fact regarding the priority date of claim 10 of the '334 patent. Accordingly, the Court DENIES Defendant's motion for summary judgement that claim 10 of the '334 patent is entitled to a priority date no earlier than November 9, 2015.

## IV.   ORDER

Plaintiff's motion for summary judgment (Dkt. No. 207) is GRANTED in part and DENIED in part.  Defendant's motion for partial summary judgment (Dkt. No. 249) is DENIED. As for Plaintiff's motion:

1. Plaintiff's motion for summary judgement of infringement as to claim 11 of the '026 patent and claims 10 and 14–16 of the '334 patent is GRANTED;

2. Plaintiff's motion for summary judgement of no invalidity based on anticipation, obviousness, or lack of written description is GRANTED;

3.  Plaintiff's motion for summary judgement that claims 1 and 11 of the '026 patent and claims 1 and 3 of the '309 patent have an effective filing date of February 24, 2014 is GRANTED;

4.  Plaintiff's motion for summary judgement of no inequitable conduct is GRANTED; and

5.  Plaintiff's motion for summary judgement as to Defendant's antitrust counterclaims is GRANTED.

The parties shall, within 10 days of this order, confer and submit a joint status report setting forth a proposed trial date.

Dated this 17th day of September, 2024.

David G. Estudillo
United States District Judge

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 207, 249) - 35